ELECTRONICALLY FILED 02/14/11

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

**ROBISON, BELAUSTEGUI, SHARP & LOW**
Kent R. Robison, Esq., NSB # 1167
Kristen Martini, Esq., NSB # 11272
71 Washington Street
Reno, Nevada  89503
Telephone: (775) 329-3151
Facsimile:  (775) 329-7169

**KANNER & WHITELEY, L.L.C.**
Allan Kanner, Esq. (*pro hac vice* admission to be applied for)
Elizabeth B. Petersen, Esq. (*pro hac vice* admission to be applied for)
David A. Pote, Esq. (*pro hac vice* admission to be applied for)
701 Camp Street
New Orleans, Louisiana  70130
Telephone: (504) 524-5777
Facsimile:  (504) 524-5763

**JANET, JENNER & SUGGS, LLC**
Howard A. Janet, Esq. (*pro hac vice* admission to be applied for)
Robert K. Jenner, Esq. (*pro hac vice* admission to be applied for)
Kenneth M. Suggs, Esq. (*pro hac vice* admission to be applied for)
1829 Reisterstown Road, Suite 320
Baltimore, Maryland  21208
Telephone: (410) 653-3200
Facsimile:  (410) 653-6903

**GERMAN RUBENSTEIN LLP**
Steven J. German, Esq. (*pro hac vice* admission to be applied for)
Joel M. Rubenstein, Esq. (*pro hac vice* admission to be applied for)
19 West 44th Street, Suite 1500
New York, New York  10036
Telephone: (212) 704-2020
Facsimile:  (212) 490-4800

**ATTORNEYS FOR PLAINTIFFS**

1

PHILIP ROEDER, ANNA ROEDER,      )
LISA LACKORE, individually and      )
as mother and natural guardian of      )
MELISSA LACKORE and COLE      )
LACKORE, minors; MICHAEL LACKORE, )
individually and as father and natural guardian of )
MELISSA LACKORE and COLE LACKORE, )
minors and DAYNA ANGLIN      )
      )
      )
      )
   Plaintiffs,      )
      )
   vs.      )
      )
ATLANTIC RICHFIELD COMPANY     )
and BP AMERICA, INC.      )
      )
   Defendants.      )
      )

Case No. _____

**CLASS ACTION COMPLAINT**

## <u>CLASS ACTION COMPLAINT</u>

Plaintiffs, by their attorneys, Robison, Belaustegui, Sharp & Low, Kanner & Whiteley, L.L.C., Janet, Jenner & Suggs, LLC and German Rubenstein LLP, bring this Civil Action on their own behalf and on behalf of the classes they represent to obtain damages, both compensatory and punitive and costs of suit from the named Defendants, and complain and allege, in this Class Action Complaint, as follows:

## I.    **JURISDICTION AND VENUE**

1.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. 1332(d).

2.    The size of each putative class involves 100 or more members.

3.    The amount in controversy exceeds $5,000,000.00, excluding interest and costs.

4.      At least one class member is diverse from one Defendant.

5.      Venue is appropriate in this District pursuant to 28 U.S.C. § 1391, because the acts which give rise to the claims alleged in this Complaint occurred and continue to occur within this District.

## II.      PARTIES

### A. Plaintiffs

6.      Plaintiff Philip Roeder is a resident of Yerington, Nevada.  Philip Roeder co-owns the property located at 99 Locust Drive, Yerington, Nevada.  As a result of the actions of Defendants, toxic and hazardous substances have entered onto his property, have contaminated his property, air, land, water, groundwater, drinking water, dwelling and surrounding environment, thereby causing Philip Roeder to suffer damage to his property and personal finance, loss of the use and enjoyment of his residence and destruction of his community. Through consumption of contaminated well water and inhalation of contaminated air, Philip Roeder has been exposed to Defendants' toxic and hazardous substances.  As a result of the actions of Defendants, toxic and hazardous substances entered onto Philip Roeder's person, property, air, land, water, groundwater, drinking water, dwelling and surrounding environment, thereby causing Philip Roeder to suffer an increased risk of future illness necessitating medical monitoring.

7.      Plaintiff Anna Roeder is a resident of Yerington, Nevada.  Anna Roeder co-owns the property located at 99 Locust Drive, Yerington, Nevada.  As a result of the actions of Defendants, toxic and hazardous substances have entered onto her property, have contaminated her property, air, land, water, groundwater, drinking water, dwelling and surrounding environment, thereby causing Anna Roeder to suffer damage to her property and personal

3

finance, loss of the use and enjoyment of her residence and destruction of her community. Through consumption of contaminated well water and inhalation of contaminated air, Anna Roeder has been exposed to Defendants' toxic and hazardous substances. As a result of the actions of Defendants, toxic and hazardous substances entered onto Anna Roeder's person, property, air, land, water, groundwater, drinking water, dwelling and surrounding environment, thereby causing Anna Roeder to suffer an increased risk of future illness necessitating medical monitoring.

8.      Plaintiff Lisa Lackore is a resident of Yerington, Nevada. Lisa Lackore co-owns the property located at 64 Luzier Lane Yerington, Nevada. As a result of the actions of Defendants, toxic and hazardous substances have entered onto her property, have contaminated her property, air, land, water, groundwater, drinking water, dwelling and surrounding environment, thereby causing Lisa Lackore to suffer damage to her property and personal finance, loss of the use and enjoyment of her residence and destruction of her community. Through consumption of contaminated well water and inhalation of contaminated air, Lisa Lackore has been exposed to Defendants' toxic and hazardous substances. As a result of the actions of Defendants, toxic and hazardous substances entered onto Lisa Lackore's person, property, air, land, water, groundwater, drinking water, dwelling and surrounding environment, thereby causing Lisa Lackore to suffer an increased risk of future illness necessitating medical monitoring.

9.      Plaintiff Michael Lackore is a resident of Yerington, Nevada. Michael Lackore co-owns the property located at 64 Luzier Lane, Yerington, Nevada. As a result of the actions of Defendants, toxic and hazardous substances have entered onto his property, have contaminated his property, air, land, water, groundwater, drinking water, dwelling and surrounding

environment, thereby causing Michael Lackore to suffer damage to his property and personal finance, loss of the use and enjoyment of his residence and destruction of his community. Through consumption of contaminated well water and inhalation of contaminated air, Lisa Lackore has been exposed to Defendants' toxic and hazardous substances. As a result of the actions of Defendants, toxic and hazardous substances entered onto Michael Lackore's person, property, air, land, water, groundwater, drinking water, dwelling and surrounding environment, thereby causing Michael Lackore to suffer an increased risk of future illness necessitating medical monitoring.

10.    Plaintiff Lisa Lackore, as mother and natural guardian of Melissa Lackore and Cole Lackore, minors, is a resident of Yerington, Nevada. Lisa Lackore owns the property located at 64 Luzier Lane, Yerington, Nevada. Through consumption of contaminated well water and inhalation of contaminated air, Melissa Lackore and Cole Lackore have been exposed to Defendants' toxic and hazardous substances. As a result of the actions of Defendants, toxic and hazardous substances entered onto Melissa Lackore's and Cole Lackore's person, property, air, land, water, groundwater, drinking water, dwelling and surrounding environment, thereby causing Melissa Lackore and Cole Lackore to suffer an increased risk of future illness necessitating medical monitoring.

11.    Plaintiff Michael Lackore, as father and natural guardian of Melissa Lackore and Cole Lackore, minors, is a resident of Yerington, Nevada. Michael Lackore owns the property located at 64 Luzier Lane, Yerington, Nevada. Through consumption of contaminated well water and inhalation of contaminated air, Melissa Lackore and Cole Lackore have been exposed to Defendants' toxic and hazardous substances. As a result of the actions of Defendants, toxic and hazardous substances entered onto Melissa Lackore's and Cole Lackore's person, property,

5

air, land, water, groundwater, drinking water, dwelling and surrounding environment, thereby causing Melissa Lackore and Cole Lackore to suffer an increased risk of future illness necessitating medical monitoring.

**B. Defendants**

12.     Defendant Atlantic Richfield Company ("ARCO") is a for profit, business corporation organized and existing under the laws of Delaware.

13.     ARCO is the successor corporation to Anaconda Company ("Anaconda"), which owned and operated the Yerington Anaconda Mine Site (the "Mine Site") in Yerington, Nevada beginning in 1941. In or about 1977, ARCO acquired Anaconda and assumed its operations at the Mine Site. ARCO owned and operated the Mine Site from 1977 to 1982.

14.     Defendant BP America, Inc., ("BP") is a for profit, business corporation organized and existing under the laws of Delaware.

15.     BP directly or indirectly purchased and/or acquired ARCO on March 3, 1999. As a result of such merger and/or acquisition of ARCO, BP assumed liability for all claims which could have been brought against ARCO. For purposes of this action, the allegations and claims against ARCO are also allegations and claims against BP as its successor.

## III.    FACTUAL ALLEGATIONS

**A. Background**

16.     This is a Civil Action to secure redress from Defendants for damages suffered by Plaintiffs as a result of Defendants' wrongful emission, release, discharge, handling, storage, transportation, processing and disposal of toxic and hazardous substances associated with the Mine Site, and/or their failure to identify, remove and or properly remediate said toxic and hazardous substances.

17.     The Mine Site is a formerly operating low-grade copper mine and extraction facility covering more than 3,400 acres in Mason Valley, Lyon County, Nevada, approximately two miles west of the City of Yerington, directly off of Highway 95, at 103 Birch Drive and includes portions of Township 13N, Range 25E, Sections 4, 5, 8, 9, 16, 17, 20, and 21 (Mount Diablo Baseline and Meridian) on the Mason Valley and Yerington USGS 7.5 minute quadrangles.

18.     The Mine Site, which has been abandoned, consists of an open-pit mine, mill buildings, tailing piles, waste fluid ponds, leach vats, heap-leaching pads, evaporation ponds, an electro-winning plant, and other remnants of the mining operations.

19.     Operations at the Mine Site began in 1918.  The Mine Site was originally operated by Empire Nevada Mining & Smelting Co. and was known as the Empire Nevada Mine.  In 1941, Anaconda acquired the Mine Site and operated the Mine Site from 1952 through 1977.  In or about 1977, ARCO acquired Anaconda and assumed its operation of the Mine Site until 1982.

20.     During the years of operations at the Mine Site, Defendants and their predecessors removed approximately 360 million tons of ore and debris from the open pit mine, much of which now remains in tailings or leach heap piles.  Defendants generated 15 million tons of overburden that resulted in 400 acres of waste rock, 900 acres of contaminated tailings, 300 acres of disposal ponds and a 180-acre pit lake approximately one mile long, 800 feet deep with 500 feet of water, which contains approximately 40,000 acre-feet of water that increases annually.

21.     The toxic and hazardous substances generated by Defendants contain, among other things: aluminum, arsenic, beryllium, boron, cadmium, chromium, copper, iron, lead, manganese, mercury, molybdenum, nickel, selenium, zinc, uranium-234, uranium-235, uranium-

7

238, thorium-230, thorium-232, and radium-228.  To date, Defendants have failed to fully identify, characterize, remove and/or properly remediate said toxic and hazardous substances.

22.     Plaintiffs have been exposed to toxic and hazardous substances as a result of Defendants' wrongful emission, release, discharge, handling, storage, transportation, processing and disposal of toxic and hazardous substances associated with the Mine Site and/or Defendants' failure to identify, remove and or properly remediate toxic and hazardous substances.

23.     Toxic and hazardous substances have contaminated, and continue to contaminate, soil, sludges, air, groundwater, and surface water, so that Plaintiffs were, and continue to be, exposed to toxic and hazardous substances through inhalation, dermal contact and ingestion, including consumption of contaminated groundwater.

24.     Large amounts of toxic and hazardous substances remain today at and around the Mine Site.  The ongoing presence of toxic and hazardous substances has impacted Plaintiffs' properties, and deprives Plaintiffs of their free use and enjoyment of their properties.

25.     Disturbed and concentrated heavy metals at the Mine Site pose threats through inhalation and ingestion that can result in neurological, kidney, and liver damage, as well as behavior and learning problems.  As a result of Defendants' failure to properly remediate toxic and hazardous substances, Plaintiffs and the class members are at risk of developing serious latent disease and other adverse medical conditions.

## B. <u>Groundwater</u>

26.      Groundwater contamination was identified at the Mine Site as early as the 1970s. In the late 1970's, the U.S. Geological Survey ("USGS") described a groundwater plume of arsenic, cadmium, cobalt, copper, iron, lead, manganese, mercury, molybdenum, selenium, and zinc below the site and migrating northward.  A geological survey conducted by the United States Department of Interior in 1982 confirmed contamination of shallow ground water at the Mine Site and concluded that "deeper ground water nearest the waste-disposal ponds has deteriorated appreciably in quality."  Geological Survey, Open-File Report 80-1217, 1982.   As early as 1982 the Nevada Division of Environmental Protection ("NDEP") issued its first Finding of Violation to ARCO for groundwater pollution associated with the Mine Site.  NDEP issued another administrative order to ARCO in October 1985 to remediate groundwater contamination in the vicinity of the Anaconda tailings area.  Despite the issuance of these and numerous subsequent administrative violations and Orders concerning contamination at the Mine Site, Defendants have failed, for more than two decades, to properly remediate the Mine Site and to prevent the release, discharge and migration of toxic and hazardous substances from the Mine Site.

27.      As a result of Defendants' discharges, a groundwater plume exists under the Mine Site and has migrated offsite to surrounding residential and commercial properties.   The groundwater plume is contaminated with, amongst other toxic and hazardous substances, arsenic, cadmium, cobalt, copper, iron, lead, manganese, mercury, molybdenum, selenium, uranium, zinc and radioisotopes including uranium-234, uranium-238, thorium-230 and thorium-232.

28.      The shallow aquifer is contaminated with acidic process waters and metals from the process areas, unlined evaporation ponds, and leaking heap-leach pads and tailings piles.

Intermediate and deep aquifers are interconnected and have also been contaminated as a result of Defendants' operations.

29.     Defendants have also contaminated domestic wells in close proximity to the Mine Site with toxic and hazardous substances including arsenic, gross alpha radiation and uranium, at levels exceeding regulatory limits.

30.     Exposure to arsenic can cause various forms of cancer including, but not limited to, skin and lung cancer and cancer of the bladder, kidney, nasal passages, liver, and prostate. Exposure to arsenic can cause other serious health effects such as skin lesions, peripheral neuropathy, anemia, thickening and discoloration of skin, stomach pain, nausea, vomiting, diarrhea, and liver effects as well as cardiovascular, pulmonary, immunological, neurological, reproductive, and endocrine system effects. Exposure to uranium can cause cancer and kidney toxicity.

31.     Localized groundwater is the sole source of drinking water for approximately 3,000 people living within four miles of the Mine Site.

32.     More than 250 households near the Mine Site rely on private domestic wells for their drinking water. Currently, ARCO provides a limited supply of bottled water to 180 households whose wells have been contaminated.

33.     In January 2010, the United States Environmental Protection Agency ("USEPA") acknowledged for the first time that private water supply wells that are located north and possibly west of the Mine Site have been impacted by contamination from the Mine Site.

## C. **Fugitive Dust**

34.     Defendants' improper storage and disposal of toxic and hazardous substances at the Mine Site contributes to chronic and uncontrolled emissions of particulates containing pollutants and hazardous substances that blow off-site and onto Plaintiffs' properties during wind events.

35.     Wind, combined with a semi-arid environment, contributes to contaminated fugitive dust blowing off the Mine Site.

36.     The fugitive dust coming from the Mine Site contaminates Plaintiffs' person, poses a nuisance to neighboring residents and properties and constitutes a threat to human health and the environment.

## IV.     CLASS ALLEGATIONS

37.     This Class Action is being filed by Plaintiffs, pursuant to Federal Rule of Civil Procedure Rule 26, on behalf of themselves and others similarly situated.

38.     Plaintiffs seek to certify the following classes defined as:

> **Property Damage Class:**     All persons who, on or after February 14, 2011, have owned and/or rented real property located within the boundaries of Pauite Drive to the north; Alternate Highway 95 to the east; the Mine Site to the south and the Mine Pass Road to the west in Yerington, Nevada; and

> **Medical Monitoring Class:** All persons who, on or before February 14, 2011, ever resided on property located within the boundaries of Pauite Drive to the north; Alternate Highway 95 to the east; the Mine Site to the South and the Mine Pass Road to the west in Yerington, Nevada, and were exposed to toxic and hazardous substances.

11

39.     To the extent revealed by discovery and investigation, there may be additional appropriate classes and/or subclasses from the above class definition which are broader and/or narrower in temporal and/or scope or exposure.

40.     Excluded from the classes are: Defendants' officers, directors, agents, employees and members of their immediate families; and the judicial officers to whom this case is assigned, their staff, and the members of their immediate families.

41.     Plaintiffs, members of the classes, and/or their property have been or continue to be exposed to toxic and hazardous substances at, around, and emanating from the Mine Site.

42.     Plaintiffs and the members of the classes seek redress and damages for: emotional distress, pain and suffering, economic losses, such as costs of medical monitoring and loss of property value, the establishment of a medical monitoring fund for those exposed to toxins and/or hazardous substances at or near the Class Area, punitive damages and other damages as the result of the carelessness, recklessness, negligence and willful and wanton violation of law by Defendants.  Separate and apart from acting negligently, at all relevant times Defendants named herein caused injury and damages to Plaintiffs, members of the classes, and/or their property through acts and omissions colored by actual malice and/or accompanied by a wanton and willful disregard for persons who foreseeably might be harmed by such acts or omissions.

43.     Through their regular activities Plaintiffs and the members of the classes were exposed to and, with respect to those who are current residents, continue to be exposed to, toxic and hazardous substances at, around, and emanating from the Mine Site.

44.     This Court may maintain these claims as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b) and/or 23(c)(4).

45.     Numerosity of the class – Fed. R. Civ. P. 23(a)(1):  The classes are so numerous that joinder of all members is impractical.  Upon information and belief, the number of members in each putative class exceeds 100, in satisfaction of Fed. R. Civ. P. 23(a)(1).  Class members may be notified of the pendency of this action by regular mail, supplemented (if deemed necessary and appropriate by the Court) by published notice.

46.     Existence of Common Questions of Fact and Law – Fed. R. Civ. P. 23(a)(2): There are common questions of law and fact that affect the rights of each member of the classes, and the types of relief sought are common to each member of the classes.  The same conduct by each Defendant has injured or will injure each member of the classes.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy, in satisfaction of Federal Rule 23(a)(2).  Common questions of fact and law predominate over the questions affecting only individual class members. These common factual and legal questions include:

a.     Whether, and to what extent, Defendants are responsible for the plume of contamination migrating onto, under and around Plaintiffs' properties.

b.     Whether, and to what extent, the actions and operations of Defendants have resulted in a trespass on Plaintiffs' properties.

c.     Whether, and to what extent, the actions and operations of Defendants have annoyed and disturbed the free use, possession and enjoyment of Plaintiffs' properties so as to constitute a private nuisance.

d.     Whether, and to what extent, Defendants have fraudulently suppressed material facts and information which should have been provided to Plaintiffs.

13

e.      Whether Defendants engaged in abnormally dangerous activities for which they are strictly liable.

f.      Whether Plaintiffs and other class members were injured by Defendants' actions and operations and, if so, the appropriate class-wide measure of damages.

g.      Whether Plaintiffs and other class members are entitled to medical monitoring relief.

47.     These questions of law and/or fact are common to the classes and predominate over any questions affecting only individual class members.

48.     Typicality – Fed. R. Civ. P. 23(a)(3):  The claims of Plaintiffs are typical of the claims of the members of the classes as required by Federal Rule 23(a)(3), in that all claims are based upon the same factual and legal theories.  It is the same conduct by each Defendant that has injured each member of the classes.  The principal issue in this matter involves Defendants' conduct in wrongfully emitting, releasing, discharging, handling, storing, transporting, processing, and/or disposing of their toxic and hazardous substances and failing to properly remediate same, which impacts all members of the classes.  The prosecution of separate actions by individual members of the classes would potentially result in inconsistent or varying adjudications with respect to individual members of the classes.  Prosecution of separate actions would establish incompatible standards of conduct for Defendants, which would be dispositive of the interests of other class members not parties to the adjudications, and substantially impair or impede other class members' ability to protect their interests.  Defendants' actions, which have contaminated the property of all class members, make final injunctive relief with respect to the classes appropriate.

49.     Adequacy – Fed. R. Civ. P. 23(a)(4): Plaintiffs are adequate representatives of the classes because their interests do not conflict with the interests of the members of the classes they seek to represent. Plaintiffs adequately and truly represent the interests of the absent class members. Plaintiffs and all members of the classes they seek to represent are owners of property or individuals impacted by reason of Defendants' conduct. The interests of Plaintiffs are coextensive with the interests of the other members of the classes, with common rights of recovery based on the same essential facts. Plaintiffs have retained counsel competent and experienced in complex class action litigation and Plaintiffs intend to prosecute this action vigorously. The interests of members of the classes will be fairly and adequately protected by Plaintiffs and their counsel.

50.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants and/or because adjudications respecting individual members of the classes would, as a practical matter, be dispositive of the interests of the other members or would risk substantially impairing or impending their ability to prosecute their interests.

51.     Class certification is appropriate pursuant to pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to all members of the class, thereby making final relief, including medical monitoring concerning the class as a whole appropriate.

52.     Plaintiffs and members of the classes have suffered, and will continue to suffer, harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy

15

under Fed. R. Civ. P. 23(b)(3).  Absent a class action, most members of the class likely would find the cost of litigating their claims to be prohibitive, and will have no effective remedy at law. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

53.    Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, there is no interest by members of the classes in individually controlling the prosecution of separate actions, the expense of prosecuting individual claims is prohibitive in light of the typical claimant's injury, neither Plaintiffs nor members of the proposed classes have filed or are parties to any litigation wherein the legal and factual issues raised herein are to be adjudicated, and it is desirable to concentrate the litigation of the claims made herein in a single proceeding in order to provide claimants with a forum in which to seek redress.  Whatever difficulties may exist in the management of the class action will be greatly outweighed by the efficiencies of class action procedure, including but not limited to providing claimants with a method for the redress of claims that may not otherwise warrant individual litigation.

54.    The prosecution of separate claims by individual members of the classes creates a risk that adjudication concerning individual members of the classes would, as a practical matter, be dispositive of, or substantially impair or impede, the ability of other members of the classes not parties to this action to protect their interests. If Plaintiffs are forced to pursue this action in an individual capacity, the court is likely to make legal rulings that will be dispositive of the claims of members of the proposed classes not parties herein.  Additionally, if Plaintiffs prevail,

the relief they obtain may impair or impede the ability of Defendants to provide relief to members of the proposed classes not parties herein.

55.    Defendants have acted on grounds generally applicable to all members of the proposed classes making final relief concerning the classes as a whole appropriate.

56.    Class certification is also appropriate because this Court can designate particular claims or issues for classwide treatment and may designate one or more subclasses, as needed, pursuant to Fed. R. Civ. P. 23(c)(4).

57.    Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy.  It would be impracticable and undesirable for each member of the putative classes who has suffered harm to bring a separate action.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all putative class members.

58.    No unusual difficulties are likely to be encountered in the management of this action as a class action.

59.    Class certification is also appropriate because Defendants have acted on grounds generally applicable to Plaintiffs and the members of the classes, making appropriate equitable relief with respect to Plaintiffs and the members of the classes.  Specifically, Plaintiffs and the members of the classes seek the establishment of a court-supervised medical monitoring fund to pay for periodic medical evaluations, and for attorneys' fees and costs.

60.    In addition, Plaintiffs and the medical monitoring class members allege that:

- Plaintiffs and the members of the classes have each been exposed to toxic and hazardous substances due to Defendants' negligence in handling, storing, use,

17

disposal and/or failure to properly remediate such toxic and hazardous substances.

- The toxic and hazardous substances at issue in this case are proven hazardous substances.

- Plaintiffs' and class members' exposure to toxic and hazardous substances was caused by Defendants' negligence in the handling, storing, use, disposal and/or failure to properly remediate such toxic and hazardous substances.

- As a proximate result of the exposure to toxic and hazardous substances, Plaintiffs and the members of the classes have a significantly increased risk of contracting serious latent diseases, including, without limitation, cancer.

- A monitoring procedure exists that makes early detection of these potential diseases possible.

- The prescribed monitoring regiment is different from that normally recommended in the absence of exposure to toxic and hazardous substances.

- The prescribed monitoring regiment is reasonable and appropriate according to contemporary medical and scientific principles.

61.    Plaintiffs and the members of the classes seek redress and damages for: economic losses, loss of property value, costs of medical monitoring, punitive damages, and other damages as the result of the carelessness, recklessness, negligence and willful and wanton violation of law by Defendants.

62.    Through their regular activities Plaintiffs and the members of the classes were exposed to and continue to be exposed to toxic and hazardous substances at, around, and emanating from the Mine Site.

63.    Plaintiffs and members of the classes have suffered, and will continue to suffer, harm and damages as a result of Defendants' unlawful and wrongful conduct.

64.     Plaintiffs and the members of the classes were not in any way responsible for the creation or discharge of toxic and hazardous substances from the Mine Site and have not authorized the Defendants' actions complained of herein.

## V.     FIRST CLAIM FOR RELIEF

### Nuisance

65.     Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

66.     Defendants' intentional past, present and/or continuing acts and/or omissions, constitute a nuisance in that Defendants used, have used, and/or continue to use their property and Plaintiffs' properties in a manner that has resulted in an unreasonable burden on Plaintiffs and the members of the classes in the form of personal harm, inconvenience, annoyance, substantial and unreasonable interference with use and enjoyment of their land and discomfort incidental to contaminant exposure.

67.     Defendants' intentional past, present and/or continuing activities, acts and/or omissions at and near the Mine Site constitute a private nuisance resulting in a substantial and unreasonable interference with Plaintiffs' and the members of the classes' right to the exclusive use and enjoyment of their properties through the invasion of toxic and hazardous substances on their properties and into the surrounding environment, thereby exposing Plaintiffs and the members of the classes to toxic and hazardous substances and substantially and unreasonably interfering with Plaintiffs' and the class members' free use and enjoyment of their properties.

68.     Defendants' intentional past, present and/or continuing acts and/or omissions, resulting in the intentional depositing onto and/or failure to remove or properly dispose of toxic and hazardous substances and allowing toxic and hazardous substances to remain on Plaintiffs'

19

properties, surrounding environment and community constitutes a nuisance in that Defendants have intentionally used their property in a manner that has unreasonably interfered with Plaintiffs' and the class members' property interests as well as their health and safety.

69.     Defendants knew that the invasion of toxic and hazardous substances onto Plaintiffs' and the class members' properties was substantially certain to result from their actions and/or omissions, as aforesaid.

70.     This interference with Plaintiffs' and the class members' use and enjoyment of their property is unreasonable, unwarranted and unlawful.

71.     As a direct and proximate result of Defendants' misconduct as set forth herein, Plaintiffs and the members of the classes have suffered and continue to suffer economic losses, such as costs of medical monitoring and the loss of value to their property, and other damages.

72.     Defendants are jointly and severally liable to Plaintiffs and the members of the classes for their acts and/or omissions.

73.     The nuisance that Defendants created is a continuing nuisance in that it remains unabated.

74.     Separate and apart from acting intentionally and/or negligently, at all relevant times, Defendants caused injury and damages to Plaintiffs and/or their property through acts and omissions colored by actual malice and/or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by such acts or omissions.

75.     Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to toxic and hazardous substances, individually and together, released, discharged, stored, handled, processed, disposed of and failed to remediate toxic and

hazardous substances at and surrounding the Mine Site, while failing to warn residents of the dangers such activities posed.

76.    Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to toxic and hazardous substances, and despite orders and warnings from health and environmental regulators, individually and together, intentionally masked the true extent of contamination, thereby enabling Defendants to avoid taking all appropriate steps to properly remediate the toxic and hazardous substances or to mitigate dangers created by their release, discharge, storage, handling, processing, disposal of and dumping of toxic and hazardous substances.

77.    Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to toxic and hazardous substances, and despite orders and warnings from health and environmental regulators, individually and together, intentionally failed to properly remediate the toxic and hazardous substances.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly, and severally, for compensatory damages, the costs of medical monitoring for those exposed to toxic and/or hazardous substances, punitive damages in an amount no less than three times the amount of consequential, special and/or general damages, interest, costs of suit as provided for by law, and such other relief as the Court may deem just and proper.

## VI.    SECOND CLAIM FOR RELIEF

### Nuisance Per Se

78.    Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

79.     Defendants' intentional past, present and/or continuing acts and/or omissions, constitute a nuisance in that Defendants used, have used, and/or continue to use their property and Plaintiffs' property in a manner that has resulted in an unreasonable burden on Plaintiffs and the members of the classes in the form of personal harm, inconvenience, annoyance, substantial and unreasonable interference with use and enjoyment of their land and discomfort incidental to contaminant exposure.

80.     Defendants' intentional past, present and/or continuing activities, acts and/or omissions at and near the Mine Site constitute a nuisance *per se* resulting in a substantial and unreasonable interference with Plaintiffs' and the members of the classes' right to the exclusive use and enjoyment of their properties through the invasion of toxic and hazardous substances contaminating their properties and the surrounding environment, thereby exposing Plaintiffs and the members of the classes to toxic and hazardous substances and substantially and unreasonably interfering with Plaintiffs' and the class members' free use and enjoyment of their properties.

81.     Defendants' intentional past, present and/or continuing acts and/or omissions, resulting in the intentional depositing onto and/or failure to remove or properly dispose of toxic and hazardous substances and allowing toxic and hazardous substances to remain on Plaintiffs' properties, surrounding environment and community constitutes a nuisance *per se* in that Defendants have intentionally used their property in a manner that has unreasonably interfered with Plaintiffs' and the class members' property interests as well as their health and safety.

82.     Defendants' disposal of and/or failure to remove toxic and hazardous substances in residential areas violates applicable standards and/or regulations, including, but not limited to, NRS 40.140, which constitutes a nuisance *per se*.

83.     Plaintiffs are within the class of persons the statutes and regulations described above are designed to protect and plaintiffs' injuries are the type of harm such statutes and regulations are designed to prevent

84.     Defendants knew that the invasion of toxic and hazardous substances onto Plaintiffs' and the class members' properties was substantially certain to result from their actions and/or omissions.

85.     This interference with Plaintiffs' and the class members' use and enjoyment of their property is unreasonable, unwarranted and unlawful.

86.     As a result of Defendants' wrongful acts and omissions, Plaintiffs and the members of the classes have suffered exposure to toxic and hazardous substances, annoyance, displacement, and economic loss for which damages and medical monitoring are justified.

87.     As a direct and proximate result of Defendants' misconduct as set forth herein, Plaintiffs and the members of the classes have suffered and continue to suffer economic losses, such as costs of medical monitoring and the loss of value to their property, and other damages.

88.     Defendants are jointly and severally liable to Plaintiffs and the members of the classes for their acts and/or omissions.

89.     The nuisance *per se* that Defendants created is continuing and remains unabated.

90.     Separate and apart from acting intentionally and/or negligently, at all relevant times, Defendants caused injury and damages to Plaintiffs and/or their property through acts and omissions colored by actual malice and/or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by such acts or omissions.

91.     Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to toxic and hazardous substances, individually and together,

released, discharged, stored, handled, processed, disposed of and failed to remediate toxic and hazardous substances at and surrounding the Mine Site, while failing to warn residents of the dangers such activities posed.

92.     Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to toxic and hazardous substances, and despite orders and warnings from health and environmental regulators, individually and together, masked the true extent of contamination, thereby enabling Defendants to avoid taking all appropriate steps to properly remediate the toxic and hazardous substances or to mitigate dangers created by their release, discharge, storage, handling, processing, disposal of and dumping of toxic and hazardous substances.

93.     Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to toxic and hazardous substances, and despite orders and warnings from health and environmental regulators, individually and together, failed to properly remediate the toxic and hazardous substances.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly, and severally, for compensatory damages, the costs of medical monitoring for those exposed to toxic and/or hazardous substances, punitive damages in an amount no less than three times the amount of consequential, special and/or general damages, interest, costs of suit as provided for by law, and such other relief as the Court may deem just and proper.

## VII.    THIRD CLAIM FOR RELIEF

### Strict Liability

94.     Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

95. Defendants, by manufacturing, generating, discharging, using, releasing and dispersing toxic contaminants and hazardous pollutants into a populated rural area and by failing to properly remediate and allowing those contaminants and pollutants to remain in the environment, and/or concealing knowledge of same, have engaged in abnormally dangerous, ultrahazardous, and inherently or intrinsically dangerous activities for which they are strictly liable to Plaintiffs and the members of the classes.

96. Defendants' activities pose a high degree of risk of harm to Plaintiffs, as Defendants' exposed Plaintiffs, members of the classes and their respective properties to highly toxic and hazardous substances, that said toxic and hazardous substances present serious health risks (including cancer), and that Defendants' actions and inaction continues to cause contamination in soil, dust, air, groundwater and surface water at levels higher than acceptable limits. Plaintiffs and class members have been contaminated with these toxic and hazardous substances through inhalation, dermal contact and ingestion, including consumption of contaminated groundwater.

97. The risks posed by Defendants' activities in a populated residential area could not be eliminated by the exercise of reasonable care and no safe way exists to dispose of toxic waste by simply dumping it onto land or into water in such a residential area. There is no safe way to dispose of toxic and hazardous substances in and around the Mine Site, which is located in a populated residential area, given the capacity of said toxic and hazardous substances to cause serious adverse health effects in humans. The serious health and environmental risks posed by said toxic and hazardous substances that Defendants disposed of in a residential area, and failed to properly remediate, clearly could not have been eliminated by the exercise of reasonable care on the part of Defendants.

25

98.     Defendants' disposal of toxic and hazardous substances near and around Plaintiffs' homes was neither a matter of common usage nor appropriate to the place where it was carried out. Defendants' failure to properly remediate toxic and hazardous substances which they disposed of near and around Plaintiffs' homes was neither a matter of common usage nor appropriate to the place where it was carried out.

99.     The disposal of dangerous toxic waste into the environment is a critical societal problem in Nevada, and thus, the value of such disposal activities, if any, is substantially outweighed by the serious health and environmental problems caused by them.

100.    As a direct and proximate result of Defendants' misconduct as set forth herein, Plaintiffs and the members of the classes have suffered and continue to suffer economic losses, such as costs of medical monitoring and the loss of value to their property, and other damages.

101.    Defendants are jointly and severally liable to Plaintiffs and the members of the classes for their acts and/or omissions.

102.    At all relevant times Defendants caused injury and damages to Plaintiffs and/or their property through acts and omissions colored by colored malice and/or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by such acts or omissions.

103.    Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to toxic and hazardous substances, individually and together, released, discharged, stored, handled, processed, disposed of and failed to remediate toxic and hazardous substances at and surrounding the Mine Site, while failing to warn residents of the dangers such activities posed.

26

104. Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to toxic and hazardous substances, and despite orders and warnings from health and environmental regulators, individually and together, masked the true extent of contamination, thereby enabling Defendants to avoid taking all appropriate steps to properly remediate the toxic and hazardous substances or to mitigate dangers created by their release, discharge, storage, handling, processing, disposal of and dumping of toxic and hazardous substances.

105. Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to toxic and hazardous substances, and despite orders and warnings from health and environmental regulators, individually and together, failed to properly remediate the toxic and hazardous substances.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly, and severally, for compensatory damages, the costs of medical monitoring for those exposed to toxic and/or hazardous substances, punitive damages in an amount no less than three times the amount of consequential, special and/or general damages, interest, costs of suit as provided for by law, and such other relief as the Court may deem just and proper.

## VIII.   FOURTH CLAIM FOR RELIEF

### Trespass

106. Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

107. Defendants' wrongful conduct as set forth above, including but not limited to Defendants' intentional past, present and/or continuing acts and/or omissions, resulting in Defendants' intentionally depositing onto and/or intentionally failing to remove and/or to

properly dispose of toxic and hazardous substances and intentionally allowing toxic and hazardous substances to remain on Plaintiffs' properties, surrounding environment and community resulted in the direct physical invasion of Plaintiffs' and the class members' properties by toxic and hazardous substances.

108.    The toxic and hazardous substances continue to contaminate Plaintiffs' and the class members' properties and the surrounding environment, thereby exposing Plaintiffs and the members of the classes to the toxic and hazardous substances.

109.    The invasion and exposure is ongoing and continuous.

110.    The presence of the hazardous and toxic constituents on Plaintiffs' and the class members' properties is unauthorized and unreasonable.

111.    Defendants have neither sought nor obtained Plaintiffs' and the class members' consent to store their substances and wastes on Plaintiffs' property.

112.    Defendants have intentionally allowed toxic and hazardous substances to enter and remain on the land in the possession of Plaintiffs, and Defendants have intentionally failed to remove the toxic and hazardous substances from such land.

113.    As a direct and proximate result of Defendants' misconduct as set forth herein, Plaintiffs and the members of the classes have suffered and continue to suffer economic losses, such as costs of medical monitoring and the loss of value to their property and other damages.

114.    Defendants are jointly and severally liable to Plaintiffs and the members of the classes for their acts and/or omissions.

115.    Separate and apart from acting intentionally and/or negligently, at all relevant times, Defendants caused injury and damages to Plaintiffs and/or their property through acts and

28

omissions colored by actual malice and/or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by such acts or omissions.

116.    Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to toxic and hazardous substances, individually and together, released, discharged, stored, handled, processed, disposed of and failed to remediate toxic and hazardous substances at and surrounding the Mine Site, while failing to warn residents of the dangers such activities posed.

117.    Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to toxic and hazardous substances, and despite orders and warnings from health and environmental regulators, individually and together, masked the true extent of contamination, thereby enabling Defendants to avoid taking all appropriate steps to properly remediate the toxic and hazardous substances or to mitigate dangers created by their release, discharge, storage, handling, processing, disposal of and dumping of toxic and hazardous substances.

118.    Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to toxic and hazardous substances, and despite orders and warnings from health and environmental regulators, individually and together, failed to properly remediate the toxic and hazardous substances.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly, and severally, for compensatory damages, the costs of medical monitoring for those exposed to toxic and/or hazardous substances, punitive damages in an amount no less than three times the amount of consequential, special and/or general damages, interest, costs of suit as provided for by law, and such other relief as the Court may deem just and proper.

## IX.   FIFTH CLAIM FOR RELIEF

### Battery

119.   Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

120.   Defendants, by intentionally generating, discharging, transporting, disposing, failing to properly remediate or allowing the discharge of toxic and hazardous substances, and/or concealing knowledge of same, intentionally and willfully caused a direct, harmful and/or offensive contact with Plaintiffs and the members of the classes and thereby committed battery upon Plaintiffs and the members of the classes.

121.   As a direct and proximate result of Defendants' misconduct as set forth herein, Plaintiffs and the members of the classes have suffered and continue to economic losses, such as costs of medical monitoring and the loss of value to their property and other damages.

122.   Defendants are jointly and severally liable to Plaintiffs and the members of the classes for their acts and/or omissions.

123.   Separate and apart from acting intentionally and/or negligently, at all relevant times, Defendants caused injury and damages to Plaintiffs and/or their property through acts and omissions colored by colored malice and/or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by such acts or omissions.

124.   Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to toxic and hazardous substances, individually and together, released, discharged, stored, handled, processed, disposed of and failed to remediate toxic and hazardous substances at and surrounding the Mine Site, while failing to warn residents of the dangers such activities posed.

30

125.   Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to toxic and hazardous substances, and despite orders and warnings from health and environmental regulators, individually and together, masked the true extent of contamination, thereby enabling Defendants to avoid taking all appropriate steps to properly remediate the toxic and hazardous substances or to mitigate dangers created by their release, discharge, storage, handling, processing, disposal of and dumping of toxic and hazardous substances.

126.   Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to toxic and hazardous substances, and despite orders and warnings from health and environmental regulators, individually and together, failed to properly remediate the toxic and hazardous substances.

**WHEREFORE,** Plaintiffs demand judgment against Defendants individually, jointly, and severally, for compensatory damages, the costs of medical monitoring for those exposed to toxic and/or hazardous substances, punitive damages in an amount no less than three times the amount of consequential, special and/or general damages, interest, costs of suit as provided for by law, and such other relief as the Court may deem just and proper.

## X.    SIXTH CLAIM FOR RELIEF

### Negligence

127.   Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

128.   Defendants, at all time's material hereto, acted through their respective officers, employees, and agents, who in turn acted in the scope of their authority and employment in furtherance of the business of Defendants.

31

129.   As a result of Defendants' acts and omissions, as aforesaid, extensive contamination has been documented in and around Plaintiffs' Properties.

130.   At all relevant times, Defendants knew or should have known that the toxic and hazardous substances discharged and would eventually enter Plaintiffs' and the class members' persons, properties, air, water, groundwater and surrounding environment.

131.   At all relevant times Defendants, as owners and operators of the Mine Site, owed a duty to Plaintiffs and the members of the classes to safely and properly release, discharge, handle, store, transport, process and dispose of toxic and hazardous substances associated with the Mine Site, and to advise or warn Plaintiffs and the members of the classes of the dangers emanating from the release, discharge, handling, storage, transportation, processing and disposal of toxic and hazardous substances into the soil, surface water, air, dust, groundwater and surrounding environment.

132.   At all relevant times Defendants failed to safely and properly release, discharge, handle, store, transport, process and dispose toxic and hazardous substances, and failed to advise or warn Plaintiffs and the members of the classes of the dangers emanating from the release, discharge, handling, storage, transport, processing and disposal of toxic and hazardous substances into the soil, surface water, air, dust, groundwater and surrounding environment, in breach of their duties to Plaintiffs.

133.   Defendants further breached their duty to Plaintiffs and the members of the classes by failing to use reasonable care to safeguard Plaintiffs and the surrounding environment from injury or property damage resulting from the release, discharge, handling, storage, transport, processing and disposal of toxic and hazardous substances into the soil, surface water, air, dust, groundwater and surrounding environment.

134.    As a direct and proximate result of Defendants' misconduct as set forth herein, Plaintiffs and the members of the classes have suffered and continue to suffer economic losses, such as costs of medical monitoring and the loss of value to their property.

135.    Defendants are jointly and severally liable to Plaintiffs and the members of the classes for their acts and/or omissions.

136.    At all relevant times Defendants caused injury and damages to Plaintiffs and/or their property through acts and omissions colored by actual malice and/or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by such acts or omissions.

137.    Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to toxic and hazardous substances, individually and together, released, discharged, stored, handled, processed, disposed of and failed to remediate toxic and hazardous substances at and surrounding the Mine Site, while failing to warn residents of the dangers such activities posed.

138.    Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to toxic and hazardous substances, and despite orders and warnings from health and environmental regulators, individually and together, masked the true extent of contamination, thereby enabling Defendants to avoid taking all appropriate steps to properly remediate the toxic and hazardous substances or to mitigate dangers created by their release, discharge, storage, handling, processing, disposal of and dumping of toxic and hazardous substances.

139.    Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to toxic and hazardous substances, and despite orders and

warnings from health and environmental regulators, individually and together, failed to properly remediate the toxic and hazardous substances.

**WHEREFORE,** Plaintiffs demand judgment against Defendants individually, jointly, and severally, for compensatory damages, the costs of medical monitoring for those exposed to toxic and/or hazardous substances, punitive and treble damages in an amount no less than three times the amount of consequential, special and/or general damages, interest, costs of suit as provided for by law, and such other relief as the Court may deem just and proper.

## XI.    SEVENTH CLAIM FOR RELIEF

### Negligence Per Se

140.    Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

141.    Defendants have an obligation not to violate the law in the operation and maintenance of the Mine Site.

142.    Defendants' failure to safely and properly manufacture, release, discharge, handle, store, transport, process and dispose of toxic and hazardous substances, to advise or warn Plaintiffs and the members of the classes of the dangers emanating from the release, discharge, handling, storage, transport, processing and disposal of toxic and hazardous substances into the soil, surface water, air, dust, groundwater and surrounding environment, and to properly remediate and allow those toxic and hazardous substances to remain in the environment, and/or concealing knowledge of same, as fully alleged above, constitute violations of their duty to comply with all applicable state and federal regulations intended to ensure the public safety from toxic exposures.

34

143.     Defendants' acts constitute a breach of duty subjecting Defendants to civil liability for all damages arising therefrom and for parallel state and federal law requirements, under theories of negligence *per se*.

144.     Plaintiffs are within the class of persons the statutes and regulations described above are designed to protect and plaintiffs' injuries are the type of harm statutes and regulations are designed to prevent.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly, and severally, for compensatory damages, the costs of medical monitoring for those exposed to toxic and/or hazardous substances, punitive damages in an amount no less than three times the amount of consequential, special and/or general damages, interest, costs of suit as provided for by law, and such other relief as the Court may deem just and proper.

## XII.     EIGTH CLAIM FOR RELIEF

### Unjust Enrichment

145.     Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

146.     As a result of the foregoing, Defendants were unjustly enriched by their activities. Defendants received benefits, including financial gain, from their activities, and retention of those benefits would be unjust. Specific examples of the benefits include: virtually free disposal and storage of hazardous and toxic waste for years, to the detriment of Plaintiffs and the members of the classes, and payment for incomplete investigation and remediation of their hazardous and toxic waste. Plaintiffs and the members of the classes were and remain entitled to remuneration from Defendants for their conferral of such a benefit. The failure of Defendants to

35

remunerate Plaintiffs and the members of the classes enriched and enriches Defendants beyond any rights they might ordinarily have had under contract law.

147.    As a direct and proximate result of Defendants' misconduct as set forth herein, Plaintiffs and the members of the classes have suffered and continue to suffer economic losses, such as the loss of value to their property and costs of medical monitoring, punitive damages and other damages.

148.    Defendants are jointly and severally liable to Plaintiffs and the members of the classes for their acts and/or omissions.

149.    Separate and apart from acting intentionally and/or negligently, at all relevant times, Defendants caused injury and damages to Plaintiffs and/or their property through acts and omissions colored by actual malice and/or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by such acts or omissions.

150.    Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to toxic and hazardous substances, individually and together, released, discharged, stored, handled, processed, disposed of and failed to remediate toxic and hazardous substances at and surrounding the Mine Site, while failing to warn residents of the dangers such activities posed.

151.    Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to toxic and hazardous substances, and despite orders and warnings from health and environmental regulators, individually and together, masked the true extent of contamination, thereby enabling Defendants to avoid taking all appropriate steps to properly remediate the toxic and hazardous substances or to mitigate dangers created by their

release, discharge, storage, handling, processing, disposal of and dumping of toxic and hazardous substances.

152.    Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to toxic and hazardous substances, and despite orders and warnings from health and environmental regulators, individually and together, failed to properly remediate the toxic and hazardous substances.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly, and severally, for compensatory damages, the costs of medical monitoring for those exposed to toxic and/or hazardous substances, punitive damages in an amount no less than three times the amount of consequential, special and/or general damages, interest, costs of suit as provided for by law, and such other relief as the Court may deem just and proper.

## XIII.   NINTH CLAIM FOR RELIEF

### Fraudulent Concealment

153.    Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

154.    Defendants, at all times material hereto, acted through their respective officers, employees, and agents, who in turn acted in the scope of their authority and employment in furtherance of the business of Defendants.

155.    Defendants, as owners and operators of the Mine Site, were, and continue to be, in a superior position of knowledge, compared with that of Plaintiffs and members of the classes, with respect to the presence of toxic and hazardous substances at, and emanating from, the Mine Site.

156.    Defendants possessed, and continue to posses, materials facts concerning the nature, extent, magnitude, and effects of the exposure of Plaintiffs, members of the classes and/or their property, to the toxic and hazardous materials emitted, released, stored, handled, processed, transported, disposed of and discharged from and at the Mine, which were not communicated to Plaintiffs.

157.    Defendants concealed and failed to disclose to Plaintiffs, members of the classes and public authorities, and or agencies, materials facts concerning the nature, extent, magnitude, and effects of the exposure of Plaintiffs, members of the classes and/or their property, to the toxic and hazardous materials and contaminants emitted, released, stored, handled, processed, transported, disposed of and discharged from and at the Mine Site.

158.    Defendants failed to follow proper environmental practices and regulations in their evaluation of the Mine Site and domestic water supplies, failed to conduct adequate testing, and failed to cooperate with administrative agencies, thereby delaying discovery and disclosure of the true nature and extent of contamination at and emanating from the Mine Site.

159.    At the times that Defendants possessed and/or concealed such information, Defendants knew, or should have known, that Plaintiffs and members of the classes did not possess such information.

160.    Defendants owed a duty to Plaintiffs and members of the classes to disclose known material facts concerning toxic and hazardous substances; and Defendants purposefully and intentionally concealed those facts.

161.    At the time Defendants concealed such information, Defendants knew or should have known that Plaintiffs, members of the classes, and/or property in and around the Mine Site would be exposed to toxic and hazardous substances.

38

162.    If Plaintiffs and the members of the classes had known the information concealed by Defendants, Plaintiffs and the members of the classes would not have consented to the exposure to toxic and hazardous substances.

163.    Plaintiffs and the members of the classes reasonably believed that the groundwater, air, soil, and natural resources in and around the Mine Site and their surrounding community did not pose and potential health hazard, and thus reasonably relied upon said belief.

164.    As a direct and proximate result of Defendants' misconduct as set forth herein, Plaintiffs and the members of the classes have suffered and continue to suffer economic losses, such as costs of medical monitoring and the loss of value to their property, the need for the establishment of a medical monitoring fund for those exposed to toxic and hazardous substances on and around their properties and the surrounding environment, punitive damages and other damages.

165.    Defendants are jointly and severally liable to Plaintiffs and the members of the classes for their acts and/or omissions.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly, and severally, for compensatory damages, the costs of medical monitoring for those exposed to toxic and/or hazardous substances, punitive damages in an amount no less than three times the amount of consequential, special and/or general damages, interest, costs of suit as provided for by law, and such other relief as the Court may deem just and proper.

## XIV.   TENTH CLAIM FOR RELIEF

### Negligent Misrepresentation

166.    Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

39

167.    Defendants, at all times material hereto, acted through their respective officers, employees, and agents, who in turn acted in the scope of their authority and employment in furtherance of the business of Defendants.

168.    Defendants, negligently concealed, failed to disclose and misrepresented to Plaintiffs, members of the classes and public authorities, and or agencies, material facts concerning the nature, extent, magnitude, and effects of the exposure of Plaintiffs, members of the classes and/or their property, to the toxic and hazardous materials and contaminants emitted, released, stored, handled, processed, transported, disposed of and/or discharged or released from the Mine Site.

169.    Defendants failed to follow proper environmental practices and regulations in their evaluation of the Mine Site and domestic water supplies, failed to conduct adequate testing, and failed to cooperate with administrative agencies, thereby delaying discovery and disclosure of the true nature and extent of contamination at and emanating from the Mine Site.

170.    At the time Defendants concealed such information Defendants knew or should have known that Plaintiffs, members of the classes and/or property in and around the Mine Site would be exposed to toxic and hazardous substances.

171.    Defendants knew and understood or reasonably should have known that their negligent concealment of such information would subject and continue to subject Plaintiffs, members of the classes and/or property in and around the Mine Site to continue to be exposed to toxic and hazardous substances, up to and including today.

172.    If Plaintiffs and the members of the classes had known the information concealed by Defendants, Plaintiffs and the members of the classes would not have consented to being exposed to toxic and hazardous substances.

173.    Plaintiffs and the class members reasonably believed that the groundwater, air, soil, and natural resources in and around the Mine Site and their surrounding community did not pose and potential health hazard, and thus reasonably relied upon said belief.

174.    As a direct and proximate result of Defendants' misconduct as set forth herein, Plaintiffs and the members of the classes have suffered and continue to suffer economic losses, such as costs of medical monitoring and the loss of value to their property, the need for the establishment of a medical monitoring fund for those exposed to toxic and hazardous substances on and around their Properties and the surrounding environment, punitive damages and other damages.

175.    Defendants are jointly and severally liable to Plaintiffs and the members of the classes for their acts and/or omissions.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly, and severally, for compensatory damages, the costs of medical monitoring for those exposed to toxic and/or hazardous substances, punitive damages in an amount no less than three times the amount of consequential, special and/or general damages, interest, costs of suit as provided for by law, and such other relief as the Court may deem just and proper.

## JURY TRIAL DEMAND AND PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and the members of the classes request that the Court enter an Order or Judgment against Defendant, jointly and severally, as follows:

A.    Enter an Order pursuant to Federal Rule of Civil Procedure 23 permitting this action to be maintained as a class action, appointing Plaintiffs as the representatives of the classes and Plaintiffs' counsel as counsel for the classes;

B.    Enter an Order requiring Defendants to bear the costs of medical monitoring, including, but not limited to, testing, examination, preventative and diagnostic screening for conditions that can result from, or potentially result from, exposure to arsenic, uranium, and other toxic and hazardous materials;

C.    Enter an Order requiring Defendants to bear the cost of publication to Plaintiffs and members of the classes of approved guidelines and procedures for medical screening and monitoring of Plaintiffs and members of the classes, the content, form and manner of such publication to be approved by the Court;

D.    Enter judgment in favor of Plaintiffs and the members of the classes against Defendants for costs incurred in medical monitoring, loss of property value and for all other relief, in an amount to be proven at trial, as to which they may be entitled, including interest, expert fees and costs of this suit;

E.    Award prejudgment and post-judgment interest as provided by law;

F.    Award consequential damages, according to proof;

G.    Award special and general damages, according to proof;

H.    Award punitive damages in an amount no less than three times the amount of consequential, special and/or general damages;

I.     Award treble damages in an amount no less than three times the amount of consequential, special and/or general damages; and

J.     Such other relief as this Court deems necessary, just and proper.

Plaintiffs demand a trial by jury as to all claims so triable in this action.


Dated: February 14, 2011                          By: _____
                                                       KENT R. ROBISON

                                                  **ROBISON, BELAUSTEGUI,
                                                  SHARP & LOW, P.C.**
                                                  Kent R. Robison, Esq., NSB # 1167
                                                  Kristen Martini, Esq., NSB # 11272
                                                  Washington Street
                                                  Reno, Nevada  89503
                                                  Telephone  (775) 329-3151
                                                  Facsimile  (775) 329-7169

                                                  **ATTORNEYS FOR PLAINTIFFS**

**JANET, JENNER & SUGGS, LLC**
Howard A. Janet, Esq. (*pro hac vice* admission to be applied for)
Robert K. Jenner, Esq. (*pro hac vice* admission to be applied for)
Kenneth M. Suggs, Esq. (*pro hac vice* admission to be applied for)
1829 Reisterstown Road, Suite 320
Baltimore, Maryland  21208
Telephone: (410) 653-3200
Facsimile   (410) 653-6903

**KANNER & WHITELEY, L.L.C.**
Allen Kanner, Esq. (*pro hac vice* admission to be applied for)
Elizabeth Petersen, Esq. (*pro hac vice* admission to be applied for)
David A. Pote, Esq. (*pro hac vice* admission to be applied for)
701 Camp Street
New Orleans, Louisiana  70130
Telephone:  (504) 524-5777
Facsimile:   (504) 524-5763

**GERMAN RUBENSTEIN, LLP**
Steven J. German, Esquire (*pro hac vice* admission to be applied for)
Joel M. Rubenstein, Esquire (*pro hac vice* admission to be applied for)
19 West 44th Street, Suite 1500
New York, New York 10036
Telephone:  (212) 704-2020
Telephone:  (212) 490-4800