**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PHILIP ROEDER et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | 3:11-cv-00105-RCJ-RAM |
| vs. ) | |
| ) | |
| ATLANTIC RICHFIELD CO. et al., ) | **ORDER** |
| ) | |
| Defendants. ) | |
| ) | |

This class action arises out of alleged air and groundwater contamination by a mining company in Yerington, Nevada. Defendants have moved to dismiss seven of the ten claims. For the reasons given herein, the Court grants the motion in part and denies it in part, granting it as to all challenged claims except the claims for strict liability and battery, and with leave to amend the negligence and nuisance claims, respectively, to plead per se theories thereunder if Plaintiffs wish to do so, although such theories need not be specifically pled to obtain summary judgment on them as a matter of law.

**I.     FACTS AND PROCEDURAL HISTORY**

Plaintiffs are landowners and residents in Yerington, Nevada who have had their property damaged by, and/or who are at an increased risk of being personally injured by, toxic chemicals Defendants have permitted to escape from their property (the "Mine Site") into the surrounding air, soil, and groundwater. (Am. Compl. ¶¶ 6–15, Feb. 17, 2011, ECF No. 4). The Mine Site consists of an abandoned copper mine and extraction facility in Lyon County, Nevada. (*Id.* ¶ 17). Empire Nevada Mining & Smelting Co. first opened the Mine Site as the Empire Nevada Mine

1 in 1918. (*Id.* ¶ 19). Anaconda Co. acquired the Mine Site in 1952 and operated it until 1977,
2 when Defendant Atlantic Richfield Co. ("ARCO") acquired Anaconda and operated the Mine
3 Site until 1982. (*Id.*). These companies extracted approximately 360 million tons of ore and
4 debris from the open pit mine, much of which now remains as waste in a "pit lake" and "tailings
5 or leach heap piles." (*Id.* ¶ 20). The toxic substances on the Mine Site, including arsenic,
6 chromium, lead, mercury, uranium, thorium, and radium, have contaminated the local
7 groundwater, surface water, soil, and air, leaving Plaintiffs exposed to them. (*Id.* ¶¶ 21–36).

8 Plaintiffs sued Defendants in this Court. The Amended Complaint lists ten causes of
9 action: (1) Nuisance; (2) Nuisance Per Se; (3) Strict Liability; (4) Trespass; (5) Battery; (6)
10 Negligence; (7) Negligence Per Se; (8) Unjust Enrichment; (9) Fraudulent Concealment; and
11 (10) Negligent Misrepresentation. Plaintiffs anticipate certifying two subclasses: (1) a "Property
12 Damage Class"; and (2) a "Medical Monitoring Class." (*See id.* 11). Defendants have moved to
13 dismiss all claims except those for nuisance, trespass, and negligence.

14 **II.     LEGAL STANDARDS**

15 Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the
16 claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of
17 what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47
18 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action
19 that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule
20 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720
21 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for
22 failure to state a claim, dismissal is appropriate only when the complaint does not give the
23 defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell*
24 *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is
25 sufficient to state a claim, the court will take all material allegations as true and construe them in

the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

**III.   ANALYSIS**

 **A.   Nuisance Per Se**

In most states, nuisance is a common law cause of action, but the claim has been codified in Nevada for over a century. The current statute reads in relevant part:

 Except as otherwise provided in this section[, a]nything which is injurious to health,

> or indecent and offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . is a nuisance, and the subject of an action. The action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by the nuisance, and by the judgment the nuisance may be enjoined or abated, as well as damages recovered.

Nev. Rev. Stat. § 40.140(1), (1)(a). A nuisance per se is any activity specified by law to constitute a nuisance, but in the absence of such a designation, the existence of a nuisance is a question of fact. *Jezowski v. City of Reno*, 286 P.2d 257, 260–61 (Nev. 1955). The question of fact is usually posed as whether the defendant's interference with the use and enjoyment of the plaintiff's land is substantial and unreasonable. *See id.* at 260 (quoting *Amphitheaters, Inc. v. Portland Meadows*, 198 P.2d 847, 852 (Or. 1948) (citing Restatement (First) of Torts § 822 (1939))). In *Jezowski*, the Nevada Supreme Court affirmed the following jury instruction on the definition of a nuisance generally: "anything which is injurious to health, or indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." *See id.* at 261. This approved language parrots the statute.

Section 40.140(1)(a) therefore appears to be a broad definition of nuisance to be applied by a fact-finder—it is by statute *the* definition of a private nuisance in Nevada. Although subsections (1)(b) through (1)(d) designate particular activities as nuisances per se, e.g., drug houses and the meeting places of criminal gangs, subsection (1)(a) serves as a general definition for nuisance. The *Jezowski* Court affirmed a jury's instruction with the text of section 40.140(1)(a) as the broad definition of a nuisance under Nevada law. *See id.* To say that any activity falling under this broad standard is a nuisance per se would therefore be superfluous so far as ultimate liability, but procedurally it would potentially transfer the factual determination of nuisance in a particular case from the jury to the judge. The *Jezowski* case makes clear that the section 40.140(1)(a) standard is to be applied by the jury (or by the judge as fact-finder where

applicable) as the general definition of a nuisance, and there is no broader definition of private nuisance in Nevada.  Plaintiffs must look elsewhere in the code for a more specific designation of a nuisance to establish a nuisance per se.

Defendants argue that Plaintiffs cannot point to any statute indicating that mining generally, any particular type of mining, or any particular method of disposing of waste during mining, has been designated as a nuisance such that the question of nuisance can be taken from the fact-finder under a nuisance per se theory.  Although the question of nuisance is a question of fact, no statute in Nevada designates mining as a nuisance, and as Defendants note, mining is (or at one time was) "the paramount interest" of the State of Nevada. Nev. Rev. Stat. § 37.010(f)(1); *see also NL Indus., Inc. v. Eisenman Chem. Co.*, 645 P.2d 976, 979 (Nev. 1982).  Of course, simply because an activity such as mining may be legally performed does not mean that it can never constitute a nuisance as a factual matter, *see Ileto v. Glock*, 349 F.3d 1191, 1214 (9th Cir. 2003) (citing *Woodruff v. N. Bloomfield Gravel Mining Co.*, 18 F. 753 (C.C.D. Cal. 1884) (California law)), but mining itself is clearly not a nuisance per se in Nevada.

The Court will dismiss the nuisance per se claim.  Nuisance per se is not a separate claim but a legal theory affecting the nuisance claim that Defendants have not attacked.  This does not mean that Plaintiffs cannot establish a nuisance per se via offensive summary judgment.  If Plaintiffs can identify a statute or regulation prohibiting some particular activity allegedly engaged in by Defendants, the Court could rule as a matter of law that the activity is a nuisance per se, leaving only causation and damages for determination by the fact-finder under the nuisance claim.  But Plaintiffs have not yet identified such a statute or regulation.  Plaintiffs may amend the nuisance claim to include such an allegation; however, they need not do so.  They may instead simply assert their nuisance per se theory as a motion for offensive summary judgment with respect to the nuisance claim.

///

### B. Strict Liability

In response to a question certified by this Court, the Nevada Supreme Court has adopted the strict liability theory of *Rylands v. Fletcher*, [1868] UKHL 1, (1868) 3 L.R. 330:

> The doctrine of strict liability for ultrahazardous or abnormally dangerous activities was first articulated in *Rylands v. Fletcher*, L.R. 3 H.L. 330 (1868). In *Rylands*, the defendant built a water reservoir on his property above abandoned mine shafts. The water burst through into one of the shafts and flooded the plaintiff's coal mine. Although the defendant was unaware of the shafts and was found not negligent, the English House of Lords nonetheless concluded that the defendant was liable, stating:
>
>> If the Defendants . . . had desired to use . . . [their land] for any purpose which I may term a non-natural use . . . and if in consequence of their doing so, or in consequence of any imperfection in the mode of their doing so, the water came to escape . . . , that which the Defendants were doing they were doing at their own peril; and, if in the course of their doing it, the evil arose . . . , then for the consequence of that, in my opinion, the Defendants would be liable.
>
> *Id.* at 339.
>
> The doctrine of *Rylands* has been explained and codified in the Restatement (Second) of Torts, section 519 (1977): "One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm."
>
> In response to the first question certified to this court, we now adopt the *Rylands* doctrine of strict liability as articulated in section 519 of the Restatement (Second) of Torts. Such a holding is consistent with our reasoning in strict products liability cases.
>
> Section 520 of the Restatement (Second) of Torts sets forth six factors relevant to a determination of whether an activity is abnormally dangerous: (a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes.
>
> These factors are necessarily fact specific.

*Valentine v. Pioneer Chlor Alkali Co.*, 864 P.2d 295, 297 (Nev. 1993). When applying the section 520 factors, a court "must not look at the abstract propensities or properties of the

particular substance involved, but must analyze the defendant's activity as a whole." *Id.* at 297–98 (quoting *Erbrich Prod. Co., Inc. v. Wills*, 509 N.E.2d 850 (Ind. Ct. App. 1987)).[1]

Here, the activity is open-pit copper mining. (Am. Compl. ¶ 17).  Plaintiffs allege that the toxic substances generated as a part of the mining operation included arsenic, lead, mercury, uranium, thorium, radium, and a dozen other heavy metals that contaminated the air and water adjacent to the Mine Site. (*Id.* ¶ 21). Courts have imposed strict liability under *Rylands* and section 520 based on this kind of contamination. *See State Dep't of Envtl. Prot. v. Ventron Corp.*, 468 A.2d 150, 154, 160 (N.J. 1983) (toxic contamination from mercury processing); *Young v. Darter*, 363 P.2d 829 (Okla. 1961) (damage to a cotton crop by the use of weed poison on adjacent land); *Ball v. Nye*, 99 Mass. 582 (1868) (contamination of a well by percolation of manure-contaminated water from an adjacent barn). In Minnesota, strict liability has applied specifically to groundwater contamination under the *Rylands* rule for over a century. *See Minn. Mining & Mfg. Co. v. Travelers Indem. Co.*, 457 N.W.2d 179, 183 (Minn. 1990) (citing *Berger v. Minn. Gaslight Co.*, 62 N.W. 336, 336–37 (Minn. 1895)). The U.S. District Court in Pennsylvania has held that even the maintenance of an underground gasoline tank in an urban area can be considered an abnormally dangerous activity, because although such tanks are

---

[1] Some commentators have criticized the factor-based approach of the Restatement (Second) for obscuring the difference between strict liability (as developed in *Rylands*) and simple negligence such that the purposes of strict liability are not properly served. *See, e.g.*, 2 Dan B. Dobbs, *The Law of Torts* § 347 (2001). The Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 20 (2005) abandons the factor-based approach and returns to the element-based approach of the Restatement (First). *See* 2 Dan B. Dobbs, *The Law of Torts* § 347 (Supp. 2010). Under the Restatement (Third):

> An actor who carries on an abnormally dangerous activity is subject to strict liability for physical harm resulting from the activity. An activity is abnormally dangerous if [it] creates a foreseeable and highly significant risk of physical harm even when reasonable care is exercised by all actors; and the activity is not one of common usage.

Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 20 (2005).

1 relatively common, their operation and maintenance is not performed by "many people in the
2 community." *Graham Oil Co. v. BP Oil Co.*, 885 F. Supp. 716, 722 (W.D. Pa. 1994) (quoting
3 Restatement (Second) of Torts § 520 cmt. i).  This last case probably goes too far, but the Court
4 need not reach nearly so far to deny dismissal in the present case.  The Restatement (Third) uses
5 the escape of toxic chemicals as an *example* of strict liability.  *See* Restatement (Third) of Torts:
6 Liability for Physical and Emotional Harm § 20 illus. 2.  In such cases, where carefulness cannot
7 prevent the harm, reasonable care is inapposite, and there is a strict duty to prevent the escape of
8 the harmful material.

9 Defendants note that some courts have found that mining is not an abnormally dangerous
10 activity under section 520.  Defendants first cite to *Marmo v. IBP, Inc.*, which noted that "coal
11 mining operations regarded as usual and normal" are not considered abnormally dangerous. 362
12 F. Supp. 2d 1129, 1132 (D. Neb. 2005) (holding that the operation of a wastewater treatment
13 facility was not abnormally dangerous) (quoting *Fitzpatrick v. U.S. West Co.*, 518 N.W.2d 107,
14 115 (Neb. 1994) (citing W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 75 (5th
15 ed. 1984))).  Defendants next cite to *In re Flood Litig.*, 607 S.E.2d 863 (W. Va. 2004).  In that
16 case, the Court held that coal mining was not abnormally dangerous. *Id.* at 874.  However,
17 neither the District of Nebraska case nor the West Virginia case concerned seepage of toxic
18 substances.  The West Virginia case concerned a claim that coal mining was abnormally
19 dangerous because the attendant alteration of the local topography created an abnormally high
20 risk of flash flooding, a claim the Court disbelieved as a factual matter and, more importantly,
21 the risk of which could be reduced by the exercise of due care as a legal matter, bringing the case
22 outside of the strict liability rule. *Id.*  Likewise, the court in the District of Nebraska case
23 determined that "the risk of harm associated with the emission of hydrogen sulfide can be
24 controlled or eliminated with due care," bringing that case outside of the strict liability rule.
25 *Marmo*, 362 F. Supp. 2d at 1134.  Strict liability applies when, and only when, the harm for

which the plaintiff means to hold the defendant liable cannot have been prevented with due care. In such cases, the defendant is held strictly liable to pay for any harm resulting from the inevitable effects of his activity. This is the nature of a strict liability claim as contradistinguished from a negligence claim.

The Court will deny the motion to dismiss the strict liability claim. Strict liability is available in this case under either the factor-based approach of the Restatement (Second), which the Nevada Supreme Court currently approves, or under the element-based approach of the Restatement (Third), even assuming the Nevada Supreme Court would now adopt it. The present case is most analogous to the *Ventron* case from New Jersey, and in fact a relevant treatise uses that case as an example of strict liability in the toxic tort context. *See* Am. Bar Ass'n, Section of Env't, Energy, & Res., *Toxic Tort Litigation* 31–32 (D. Alan Rudlin ed. 2007). Professor Dobbs likewise notes that "[s]trict liability for accumulation, escape, percolation, or disposal of [toxic] wastes seems to be especially appropriate." 2 Dobbs, *supra*, § 348, at 957. Open-pit copper mining likely had a great value to the community and was likely appropriate to the area of the Mine Site when it was ongoing, and open-pit copper mining may be common in Nevada (or may have been so during the relevant time period). However, it was not likely a common activity for "many people in the community." Moreover, open pit mining likely involves the use of many chemicals and the storage of many waste materials that will inevitably seep into the ground when stored in outdoor piles, as Plaintiffs allege, creating a high degree of risk of harm to people and land via heavy metals contamination. The harm is likely to be great, causing serious health problems, such as cancer. Finally, under the Restatement (Third) and *Rylands*, the risk of such seepage cannot be eliminated through reasonable care. In order to be profitable, a mine must presumably create abnormally vast piles of waste that cannot reasonably be isolated from the surrounding air and soil. Whatever is in these waste piles will inevitably diffuse into the surrounding environment. The Court will not dismiss the strict liability claim.

### C.     Battery

The criminal code defines "battery" as "any willful and unlawful use of force or violence upon the person of another," *see* Nev. Rev. Stat. § 200.481, and the State Bar of Nevada suggests using this language to instruct juries in civil battery cases, *see* State Bar of Nevada, Nev. J.I. - Civil, 6IT.2 (2011). The Nevada Supreme Court does not appear to have expressly adopted a definition of civil battery, so the federal courts have relied on the Restatement. *See, e.g.*, *Switzer v. Rivera*, 174 F. Supp. 2d 1097, 1109 (D. Nev. 2001) (Hunt, J.) (citing Restatement (Second) of Torts §§ 13, 18 (1965)). Under the Restatement:

> An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.

Restatement (Second) of Torts § 13. Section 18 replaces "a harmful" with "an offensive." In other words, battery requires (1) an intent to cause harmful or offensive contact or the imminent apprehension of harmful or offensive contact (2) that results in harmful or offensive contact. *See* Restatement (Second) of Torts §§ 13, 18. Under the Restatement (Second), "intent" has a slightly broader meaning than it has under the criminal law. "The word 'intent' is used throughout the Restatement of this Subject to denote that the actor desires to cause consequences of his act, *or* that he believes that the consequences are substantially certain to result from it." *Id.* § 8A (emphasis added). This definition subjects an actor to liability in some circumstances even where he does not desire the tortious result, although mere recklessness is not enough:

> 1. A throws a bomb into B's office for the purpose of killing B. A knows that C, B's stenographer, is in the office. A has no desire to injure C, but knows that his act is substantially certain to do so. C is injured by the explosion. A is subject to liability to C for an intentional tort.
>
> 2. On a curve in a narrow highway A, without any desire to injure B, or belief that he is substantially certain to do so, recklessly drives his automobile in an attempt to pass B's car. As a result of this recklessness, A crashes into B's car, injuring B. A is subject to liability to B for his reckless conduct, but is not liable to B for any intentional tort.

*Id.* § 8A illus. 1–2. These illustrations do not, unfortunately, address the situation where an actor

subjectively desires no harm to any person at all, but believes that harmful consequences are substantially certain to befall some person as a result of his actions.

The Nevada Supreme Court has cited section 8A one time, and in doing do it adopted a textually subtle but substantively significant and unorthodox variation of the "substantial certainty" rule. *See Mallin v. Farmers Ins. Exch.*, 839 P.2d 105, 107 (Nev. 1992) ("Specifically, 'intent' or 'intention' denotes a design or desire to cause the consequences of one's acts *and* a belief that given consequences are substantially certain to result from the acts." (citing *id.* § 8A) (emphasis added)). In other words, it appears that in Nevada the "desire" and "substantial certainty" prongs of intent for the purposes of tort law are conjunctive, not disjunctive as they are in most jurisdictions. *See, e.g.*, *Garratt v. Dailey*, 279 P.2d 1091, 1094 (Wash. 1955) (accepting that the defendant had no desire to cause the plaintiff injury but remanding to the trial court to determine whether he knew his actions were substantially certain to result in the injury).

However, *Mallin* was concerned with interpreting the word "intentional" under an insurance contract, and the discussion is therefore dicta as it relates to a direct tort claim. The Court believes that the Nevada Supreme Court, were it to closely examine the distinction in a battery case, would adopt the traditional, disjunctive *Garratt* rule. The conjunctive *Mallin* rule could result in the exculpation of a defendant who intends to and does cause certain harm, so long as he was not subjectively substantially certain that his acts would in fact cause the harm. For example, the *Mallin* rule would seem to exculpate a defendant who throws a bottle at a plaintiff from 500 yards away, intending that he hit his target but doubting that he will succeed, even if he does in fact succeed. In a case more like the present one, a defendant who is substantially certain that harm will result from his acts, but who hopes against hope that harm does not result, would be exculpated. In either of these examples under the *Mallin* rule, the "substantial certainty" prong, which was specifically instituted to *expand* the mens rea for which a battery defendant could be held liable, would actually function to narrow it.

In summary, either intent to cause harm or offense, or the substantial certainty that it will result, is required for a common law battery in Nevada. Plaintiffs have alleged enough under the second prong. The Court will not dismiss the battery claim.

### D.     Negligence Per Se

Like nuisance per se, negligence per se is not a separate cause of action but a legal theory whereby a plaintiff can establish a breach of the duty of care simply by establishing that a defendant has violated a law or regulation that was designed to protect a class to which the plaintiff belongs and to prevent the type of harm the plaintiff alleges the defendant caused. In such a case, the defendant's actions are deemed to have been unreasonable as a matter of law, and only causation and damages are left for trial. Negligence per se is a legal issue attendant to a negligence claim to be raised in a motion for summary judgment or for judgment as a matter of law. It is not a separate cause of action.

As Defendants note, Plaintiffs have failed to identify any federal, state, or local laws or regulations relevant to their alleged injuries they believe Plaintiffs have violated, causing them injury. (*See* Am. Compl. 34–35). Plaintiffs allege only "violations of [Defendants'] duty to comply with all applicable state and federal regulations intended to ensure the public safety from toxic exposures." (*Id.* ¶ 142). The Court will therefore dismiss the separate negligence per se claim but will permit Plaintiffs to amend the negligence claim to include a negligence per se theory if they wish. Such amendment is not required, however, for Plaintiffs to move for offensive summary judgment on the duty and breach elements of the negligence claim in the future on a negligence per se theory.

### E.     Unjust Enrichment

In Nevada, the elements of an unjust enrichment claim or "quasi contract" are: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) acceptance and retention of the benefit by the defendant (4) in circumstances

where it would be inequitable to retain the benefit without payment. *See Leasepartners Corp., Inc. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997) (quoting *Unionamerica v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981) (quoting *Dass v. Epplen*, 424 P.2d 779, 780 (Colo. 1967))). An indirect benefit will support an unjust enrichment claim. *Topaz Mut. Co., Inc. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992) (recognizing an actionable unjust enrichment claim where there was an indirect benefit conferred upon the defendant). Unjust enrichment is an equitable substitute for a contract, and an action for unjust enrichment therefore cannot lie where there is an express written agreement governing the relationship at issue. *Lipshie v. Tracy Inv. Co.*, 566 P.2d 819, 824 (Nev. 1977).

Here, Plaintiffs do not allege having bestowed any benefit upon Defendants, and the Court will therefore dismiss the unjust enrichment claim. The claim known as "unjust enrichment" in most states—but which is more accurately called "restitution" in California—means more than that the defendant has profited unscrupulously while the plaintiff has been harmed. It is not enough that a defendant "smile, and smile, and be a villain." The claim only lies against a defendant who has willingly received the plaintiff's labor or goods without giving anything of equal value in return under circumstances where it would be inequitable not to require payment or "restitution" therefor. An unjust enrichment claim requires that the plaintiff has in some way conferred a benefit onto the defendant. *See* Restatement (First) of Restitution § 1 cmt. b (1937) ("A person confers a benefit upon another if he gives to the other possession of or some other interest in money, land, chattels, or choses in action, performs services beneficial to or at the request of the other, satisfies a debt or a duty of the other, or in any way adds to the other's security or advantage."). Plaintiffs do not allege such facts here.

It is possible that a toxic tort plaintiff could allege a claim under an unjust enrichment theory. For example, a plaintiff could allege that a defendant stored barrels of toxic materials or heaps of waste materials on the plaintiff's land without payment, making the defendant liable for

the value of the storage under an unjust enrichment theory. But Plaintiffs here only appear to allege storage of materials on Defendants' own land, with the resulting toxic seepage better characterized as trespass, negligence, nuisance, or battery. Particularly, because Plaintiffs do not allege ever to have permitted or acquiesced in the "storage" of anything directly on their own land with the expectation of payment, the unjust enrichment claim does not lie here.

### F.    Fraudulent Concealment

> To establish a prima facie case of fraudulent concealment, a plaintiff must offer proof that satisfies five elements: (1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff; that is, the defendant concealed or suppressed the fact for the purpose of inducing the plaintiff to act differently than she would have if she had known the fact; (4) the plaintiff was unaware of the fact and would have acted differently if she had known of the concealed or suppressed fact; (5) and, as a result of the concealment or suppression of the fact, the plaintiff sustained damages.

*Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 110 (Nev. 1998) (citing *Nev. Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1415 (D. Nev. 1995) (Ezra, J.)). Plaintiff's theory of the case under this claim is that Defendants had superior knowledge of the toxic substances escaping from the Mine Site, that they failed to communicate this knowledge to Plaintiffs, that they had a duty to warn them of such information, and that if they had done so Plaintiffs would not have bought the adjacent property or would have moved to avoid exposure. (Am. Compl. 37–39).

Defendants cite to *Epperson v. Roloff*, 719 P.2d 799, 801 (Nev. 1986) for the proposition that bare, passive nondisclosure is insufficient as a matter of law to create liability under this cause of action. In *Epperson*, a couple from California purchased a home in Incline Village, Nevada that the realtor and listing agent had told them (based on representations from the seller) was equipped with solar panels on the roof for heating. *Id.* at 801. Upon moving into the home, however, they discovered that the "solar panels" on the roof were simply sheets of corrugated steel painted black. *Id.* The Eppersons brought three claims, including one for fraud. *Id.* The Nevada Supreme Court first stated the fraudulent concealment theory: "[A] defendant may be

found liable for misrepresentation even when the defendant does not make an express misrepresentation, but instead makes a representation which is misleading because it partially suppresses or conceals information." *Id.* at 803 (citing *Am. Trust Co. v. Cal. W. States Life Ins. Co.*, 98 P.2d 497, 508 (Cal. 1940); *N. Nev. Mobile Home v. Penrod*, 610 P.2d 724 (Nev. 1980); *Holland Realty v. Nev. Real Estate Comm'n*, 436 P.2d 422 (Nev. 1968)).  The Court then reversed the trial court's grant of summary judgment on the fraud claim because:

> even if the agent's statements and the statements in the brochure did not expressly misrepresent the status of the solar heating system, the Eppersons were entitled to argue to a jury that those statements were calculated to mislead them into believing that the home had a fully functioning solar heating system, and that they were justified in relying on those statements in purchasing the home.

*Id.*

Still, "[t]he duty to disclose requires, at a minimum, some form of relationship between the parties." *Mahlum*, 970 P.2d at 110.  Superior knowledge of a danger is not enough if there is no direct relationship between the parties. *Id.* ("[T]he Mahlums claim that Dow Chemical's duty to disclose arose because it possessed superior knowledge about the dangers of using silicone within the human body.  Dow Chemical had no duty to disclose to the Mahlums any superior knowledge it may have had regarding the safety of silicone products, however, because it was not directly involved in the transaction from which this lawsuit arose, or any other transaction with the Mahlums.").  In other words, a fraudulent concealment claim requires a transaction or other special relationship between the parties under which the defendant had a duty not to mislead the plaintiff.  Plaintiffs here allege no such relationship, but only the general relationship that all members of society have with one another.  This broad relationship is what gives rise to the general duty of care under a negligence claim, but it supports no specific duty of disclosure.  Without an allegation of some more particularized relationship between Plaintiffs and Defendants, Plaintiffs' claims in this case sound in negligence, nuisance, strict liability, or battery.

### G. Negligent Misrepresentaton

This claim fails for largely the same reason the fraudulent concealment claim fails: Plaintiffs allege no business transaction with Defendants. *See Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998) ("Reno Air's argument is that this tort only applies to business transactions; thus, in the context that Reno Air implemented its Drug and Alcohol Policy, this conduct does not fit squarely within a business or commercial transaction. We agree.").

### CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 28) is GRANTED in part and DENIED in part. The challenged claims are dismissed, except the claims for strict liability and battery. Furthermore, although the separate claims for nuisance per se and negligence per se are dismissed as separate causes of action, Plaintiffs may still assert these theories under the nuisance and negligence claims, respectively, via dispositive motions in the future.

IT IS SO ORDERED.

Dated this 30th day of August, 2011.

_____
ROBERT C. JONES
United States District Judge