1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PHILIP ROEDER; ANNA ROEDER; LISA LACKORE, individually and as mother and natural guardian of MELISSA LACKORE and COLE LACKORE, minors; SUZANNE SHAPE; GREGORY SHAPE; CLAUDIA HAYDEN AND TIMOTHY HAYDEN; On Behalf of Themselves And all Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> ATLANTIC RICHFIELD COMPANY and BP AMERICA INC. <br><br> Defendants. | Case No. 3:11-CV-00105-RCJ-WGC <br><br><br> **AGREED MOTION FOR CERTIFICATION OF SETTLEMENT CLASSES AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT** |

9
10
11
12
13
14
15
16
17
18

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169

19   This Agreed Motion for Certification of Settlement Classes and Preliminary Approval

20  of Class Settlement, dated as of September 11, 2012 (the "Agreed Motion"), is submitted by the

21  Plaintiffs (on behalf of themselves and as representatives of the Members of the Settlement

22  Classes[1] to be certified), by and through their counsel of record in the Litigation, and

23  Defendants Atlantic Richfield Company and BP America Inc., by and through their counsel of

24  record in the Litigation.  Pursuant to Fed. R. Civ. P. 23(a), 23(b)(3) and 23(e), the Agreed

25  Motion requests the Court to (1) conditionally certify the Settlement Classes and appoint

26  Plaintiffs as Class Representatives and their counsel as Class Counsel, (2) preliminarily

27  approve the Class Settlement, (3) approve the form and manner of notice to the Settlement

28

---

[1] Capitalized terms are defined in the Class Settlement Agreement, Attachment 1.

Classes, the procedures and deadlines for submission of proof of claim and release forms and, as applicable, environmental covenant and access agreement forms, exclusion requests, and objections, and a Class Settlement Claims Administrator, and (4) schedule a final hearing on the fairness of the Class Settlement no sooner than ninety (90) days after the later of the dates on which the appropriate federal and state officials are served with the notice required under 28 U.S.C. § 1715(b).

The Class Settlement will resolve trespass, nuisance, negligence and other tort claims asserted by two putative classes of several hundred property owners and residents in Lyon County, Nevada relating to historic mining and mineral processing and ongoing environmental response actions. The Class Settlement substantially achieves the Plaintiffs' goals for the litigation because it provides a mechanism for putative class members who now rely on private domestic wells to connect to the City of Yerington Water System and otherwise addresses concerns regarding potential exposures to Hazardous Materials attributable to the Mine Site. In addition, the Class Settlement will provide substantial monetary benefits to Members of the Settlement Classes. The Class Settlement is intended by the Settling Parties to fully, finally and forever resolve, discharge and settle all claims or causes of action that were or could have been asserted in the Litigation and the Released Claims. The facts considered by the Settling Parties in reaching this settlement as well as the facts upon which the Court may base its determination under Fed. R. Civ. P. 23(e) regarding the Class Settlement's fairness, reasonableness and adequacy are set forth below. The detailed terms of the settlement are contained in the Class Settlement Agreement (Attachment 1).

## I.    Legal Standards for Approval of Proposed Class Settlement.

Federal Rule of Civil Procedure 23(e) provides that a class action shall not be settled without approval of the court. "If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To assess the fairness, adequacy and reasonableness of a proposed class settlement, a court may consider factors such as:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); s*ee also Riker v. Gibbons,* No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010). These factors are not exhaustive, and different factors may be more important in different contexts. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 946-47. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). It is the settlement as a whole, rather than its individual component parts, that must be examined for overall fairness. *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003). However, the court "cannot modify the terms of a settlement proposal, but can only accept or reject the proposal as presented to it." *E.E.O.C. v. Pan American World Airways, Inc.*, Nos. C-81-3636 RFP, C-81-4590 RFP, 1988 WL 224232, at * 3 (N.D. Cal. June 17, 1988) (citing *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1125 n.24 (7th Cir. 1979) (internal quotations omitted)); *see also United States v. Colorado*, 937 F.2d 505, 509-10 (10th Cir. 1991) (the court "should not take it upon himself to modify the terms of the proposed settlement decree, nor should he participate in any bargaining for better terms.").

At this preliminary approval stage, the Court "need only review the parties' proposed settlement to determine whether it is within the permissible 'range of possible judicial approval' and thus, whether the notice to the class and the scheduling of the formal fairness hearing is appropriate." *Williams v. Costco Wholesale Corp.*, Civil No. 02cv2003 IEG (AJB), 2010 WL 761122, at *5 (S.D. Cal. Mar. 4, 2010). In reviewing the proposed settlement for preliminary approval, a court should weigh the strength of the plaintiffs' case, the risk, expense, complexity, and likely duration of further litigation, the stage of the proceedings, and the value

of the settlement offer as well as watch for collusion between class counsel and defendants. *Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-01662 OWW MJS, 2011 WL 284962, at *6 (E.D. Cal. Jan. 25, 2011). A court must decide whether the proposed settlement appears on its face to be fair. *Williams*, 2010 WL 761122, at *5. Preliminary approval of a settlement and notice to a proposed class is appropriate "[i]f [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with[in] the range of possible approval." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009) (*quoting In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). In addition, a court may preliminarily approve the proposed settlement when it has "some merit, is within the range of reasonableness required for a settlement offer, or is presumptively valid." *Id.* If, after consideration of the relevant factors, a court concludes that a settlement should be preliminarily approved, "an initial presumption of fairness" is established. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.

## II.  Factors Relevant to Reasonableness and Fairness of the Proposed Class Settlement.

### A.   The Litigation.

#### 1.   *The Class Action Complaint, the Amended Class Action Complaint, and the Second Amended Class Action Complaint.*

The Litigation commenced on February 14, 2011 when Plaintiffs filed a complaint [ECF No. 1] in this Court on behalf of themselves and a putative class seeking damages for alleged harm to property and a putative class seeking medical monitoring. The complaint was subsequently amended on February 17, 2011 [ECF No. 4] and December 16, 2011 [ECF No. 75].

Plaintiffs allege that metals, radioactive materials and other substances have been and are being released to the environment from the Mine Site formerly owned and operated by Atlantic Richfield Company or its predecessors. [ECF No. 75, at ¶¶ 22-23]. They further

- 4 -

1   allege that these contaminants have been or are entrained in dust that affects putative class

2   members' properties and/or have been or are found in groundwater that migrates beneath the

3   putative class members' properties and into their wells.  [ECF No. 75, at ¶¶ 25, 29-31, 36-38].

4        In the initial and First Amended Complaints, Plaintiffs alleged claims for nuisance,

5   nuisance per se, strict liability, trespass, battery, negligence, negligence per se, unjust

6   enrichment, fraudulent concealment, and negligent misrepresentation.  [ECF No. 1 and 4, at

7   ¶¶ 65-175].  The Court granted Defendants' motion to dismiss the claims for nuisance per se,

8   negligence per se, unjust enrichment, fraudulent concealment and negligent misrepresentation.

9   [ECF No. 50].  The Second Amended Class Action Complaint added four Plaintiffs, Claudia

10  and Timothy Hayden, and Suzanne and Gregory Shape [ECF No. 75, at ¶¶ 10-13] and asserted

11  only claims for nuisance, strict liability, trespass, battery and negligence.  [ECF No. 75, at

12  ¶¶ 69-134.]

13       The relief sought by Plaintiffs includes:  compensatory damages including loss of

14  property value, the costs of medical monitoring, and punitive damages.  [ECF No. 75, at

15  pp. 34-35].

16            2.    *Motions.*

17       Defendants filed a motion to dismiss [ECF No. 28] seeking to dismiss seven of

18  Plaintiffs' initial ten claims.  The Court granted the motion in part.  [ECF No. 50].

19  Subsequently, the Plaintiffs filed a motion for reconsideration of the dismissal of their unjust

20  enrichment claim.  [ECF No. 53].  After briefing and oral argument, the Court denied the

21  motion for reconsideration.  [ECF No. 82].

22       There are no pending motions.  Under the Scheduling Order entered on December 7,

23  2011 [ECF No. 72], briefing on class certification is scheduled to commence in November

24  2012 and conclude in January 2013 and be followed by a hearing in February 2013.  If classes

25  would then be certified, and prior to reaching the settlement in principle now presented to the

26  Court, counsel for the Settling Parties would have anticipated a scheduling conference to set

27  deadlines for additional discovery and motions, filing and briefing several discovery motions,

28

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169

dispositive motions and motions under F.R.E. 702, one or more pretrial conferences, and a jury trial of several weeks duration.

3.    *Discovery, Disclosures and Other Fact Investigations.*

Plaintiffs and Defendants exchanged Rule 26(a)(1) disclosures on or about December 2 and 7, 2011.  Defendants disclosed more than 100 potential witnesses and ten categories of documents from various time periods stretching as far back as the 1940's.  Plaintiffs also made substantial disclosures, listing numerous witnesses and categories of documents related not only to their own properties, but also related to the Mine Site and surrounding area.

On March 9, 2012, Plaintiffs served a subpoena for production of documents on Brown & Caldwell, Defendants' principal environmental consultant at the Mine Site for more than ten years.  The subpoena sought production of all documents related to the Mine Site and the surrounding properties.  Plaintiffs' subpoena applied to files stored in multiple Brown & Caldwell offices in the custody of more than 100 individual Brown & Caldwell employees.  In response to the subpoena, Brown & Caldwell allowed Plaintiffs to review and copy hard copy files over a two day period on April 18 and 19, 2012.  At the time settlement in principle was reached, Brown & Caldwell was also in the process of gathering electronically stored information responsive to the subpoena.  The eventual production of this electronically stored information likely would have comprised several hundred thousand documents.

On March 23, 2012, Plaintiffs served extensive requests for production of documents on Defendants.  These requests required production of documents covering several decades and addressing historic operations at the Mine Site, transfers of the Mine Site, and past and ongoing environmental investigations and other response actions.  The documents responsive to these requests have been collected from a variety of sources, including Defendants' internal company archives, public archives and document repositories, and multiple consultants and contractors who have performed work for Defendants at the Mine Site.  At the time settlement in principle was reached, Defendants were preparing to produce hard copy files in response to these requests.  This aspect of the production alone would have comprised more than one hundred

Snell & Wilmer

L.L.P.

LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169

1  thousand documents.  Production of electronically stored information responsive to Plaintiffs'
2  requests could have been more voluminous.

3      On January 4, 2012, Defendants served interrogatories and requests for production of
4  documents on each of the Plaintiffs.  On February 3, 2012, Plaintiffs provided their responses,
5  including a variety of documents and other information related to their health and their
6  properties.  Plaintiffs also provided information about their health care providers.  Beginning in
7  February 2012, Plaintiffs' counsel and Defendants' counsel engaged in a series of conferences
8  regarding the sufficiency of Plaintiffs' responses.  In the course of those conferences, Plaintiffs
9  supplemented their responses with additional health-care provider information, medical record
10 releases authorizing Defendants to collect Plaintiffs' medical records, and documents
11 containing non-privileged communications received by some of the Plaintiffs in relation to the
12 case and their concerns about the Mine Site.  However, some of Plaintiffs' discovery responses
13 likely would have been the subject of a motion to compel.  At the time a settlement in principle
14 was reached, Defendants had collected almost all of the Plaintiffs' medical records.  In
15 addition, settlement in principle was reached the week before the dates scheduled for the
16 depositions of Plaintiffs Phillip Roeder and Anna Roeder.  The depositions of the other
17 Plaintiffs were scheduled to occur shortly thereafter.

18     In addition to information obtained by means of formal discovery and disclosures under
19 the federal rules of civil procedure, there is a large amount of publicly-available information
20 about the history of the Mine Site, environmental studies of the Mine Site and surrounding
21 area, area property values, and response actions undertaken by Defendants under the oversight
22 of the Nevada Department of Conservation and Natural Resources, Division of Environmental
23 Protection (the "NDEP") and the United States Environmental Protection Agency (the "EPA").
24 Before the Litigation commenced, Plaintiffs' counsel reviewed such publicly-available
25 information and consulted with technical experts in hydrology, site remediation and remedial
26 actions, air monitoring and dispersion, real property valuation, as well as with physicians
27 regarding the circumstances at the site and in the local community.  These experts and
28 consultants assessed among other matters:  past mining and mineral processing activities and

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169

disposal practices; current environmental conditions and exposure scenarios; proposed remedial measures and potential impacts to the local community.   After the Litigation commenced, Plaintiffs' counsel and their experts continued to review and analyze the publicly-available information to prepare to prosecute Plaintiffs' claims.   In addition, Defendants' counsel and their technical experts in hydrology, geochemistry, air and groundwater modeling, toxicology, risk assessment and medicine, real estate appraisal, and history and standard of care, reviewed and analyzed the publicly-available information to prepare defenses to Plaintiffs' claims.

**B.     Evidence Considered by the Settling Parties.**

Important evidence identified by the Settling Parties' investigations and considered in connection with their decisions to settle and the negotiation of the terms of settlement includes but is not limited to:

1.     Defendant Atlantic Richfield worked with the NDEP and is now working with the EPA to respond to potential Releases from the Mine Site.   Activities performed include, but are not limited to:  implementation of a community bottled water supply program; periodic sampling and monitoring of groundwater and residential domestic water wells; surface and subsurface soil sampling; radiological surveys; implementation of significant interim removal actions; periodic air monitoring; evaluation of effectiveness of existing systems to prevent offsite migration of contaminated groundwater; and preparation of a human health risk assessment.   These activities have been and are being overseen by either NDEP pursuant to its statutory authority under N.R.S. §§ 445A.300 to 445A.730 and N.A.C. §§ 445A.070 to 445A.348 and/or EPA pursuant to its statutory authority under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9604, 9606(a), 9607 and 9622.

2.     Beginning in 2002, Defendant Atlantic Richfield has entered into multiple administrative orders on consent with NDEP and EPA for the Mine Site for performance of many of the investigation and response actions described.   *See* Administrative Order on Consent for Yerington Mine Site with NDEP, dated October 25, 2002; Administrative Order on Consent and Settlement Agreement for Removal Action and Past Response Costs,

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169

- 8 -

U.S. EPA Region IX, CERCLA Docket No. 09-2009-0010, ¶¶ 17-23.  In addition, CERCLA activities have occurred under a Unilateral Administrative Order for Initial Response Activities, U.S. EPA Region IX, CERCLA Docket No. 9-2005-0011, and an Administrative Order for Remedial Investigation and Feasibility Study, U.S. EPA Region IX, CERCLA Docket No. 9-2007-0005 ("RI/FS AO").

3.     Defendants contend that Atlantic Richfield is in compliance with all requirements of these Administrative Orders, and Plaintiffs have found no evidence to the contrary.

4.     While the Mine Site may be a source of some metals or other substances found in offsite groundwater, metals and/or other substances found in groundwater underlying portions of the Settlement Class Area also may reflect sources other than historic Mining and Mineral Processing conducted by Atlantic Richfield and its predecessors.  Some measured levels of metals and other substances are present as natural background concentrations due to the highly mineralized nature of the local geology.  In addition, some metals and other substances are due to operations conducted at the Mine Site by entities not parties to this Litigation that operated after Defendant Atlantic Richfield sold the property in 1982.

5.     Putative class members living in the Penrose Estates and Grand Estates Subdivisions are supplied by the City of Yerington Water System and therefore have no ongoing exposure to any groundwater contamination regardless of its sources.

6.     Since 2004, Defendant Atlantic Richfield has offered bottled water to all putative class members who depend upon private domestic wells for drinking water where the well water approaches or exceeds a Maximum Contaminant Level under the Federal Safe Drinking Water Act.

7.     From January 2005 through March 2008, Defendant Atlantic Richfield conducted air monitoring at the Mine Site under the supervision of the EPA.  Data collected include, but are not limited to: meteorological data such as wind speed and direction, precipitation and temperature; 24-hour average concentrations in high volume samplers for particulates, inorganic chemicals and radiochemicals; hourly average concentration samples for

- 9 -

1  PM$_{10}$ (particulate matter less than 10 micrometers in diameter); and metal samples during dust

2  events. Among other things, the data demonstrated that upwind and downwind PM$_{10}$

3  concentrations are similar to regional background concentrations and that both lead and PM$_{10}$

4  concentrations meet the National Ambient Air Quality Standards.  *See* excerpt from February

5  25, 2011 Baseline Human Health Risk Assessment for the Inhalation Pathway (Revision 1),

6  Yerington Mine Site, Lyon County, Nevada, RI/FS AO (Attachment 2), p. ES-2.

7        8.       The February 25, 2011 Baseline Human Health Risk Assessment for the

8  Inhalation Pathway performed by a consultant to Defendant Atlantic Richfield and approved by

9  the EPA concluded, among other things, that (i) "results of the chronic and acute [Human

10  Health Risk Assessments] do not indicate a potential for increased health effects associated with

11  metals and radiochemicals in dust from the [Mine Site]" and (ii) "inhalation of PM,[10] regardless

12  of the source (background or Site-related), is unlikely to result in adverse health conditions."

13  *Id.*, p. ES-2.

14        9.       Based upon the available evidence, Defendants contend that there is not a

15  strong likelihood that any Member of the Medical Monitoring Settlement Class will require

16  significant future medical care related to the events in the Litigation.  Plaintiffs have no

17  evidence to the contrary.

18        10.      In their discovery responses, Plaintiffs reported no changes in the uses

19  they make of their properties in the Settlement Class Area due to dust or groundwater

20  contamination.

21        11.      Property values in the Settlement Class Area are depressed when

22  compared with values in prior years when northwestern Nevada was experiencing substantial

23  economic growth.  The Lyon County, Nevada website reports Lyon County is the third most

24  economically stressed county in the United States with populations of at least 25,000.  The

25  reported unemployment rate (December 2010) is 18.7%, the highest at that time in Nevada.  The

26  reported foreclosure rate is 1:66, the highest in Nevada.  *See* Lyon County, Nevada

27  http://www.lyon-county.org/index.aspx?NID=31

28

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169

12.     The Settling Parties do not agree whether the presence of metals and other substances in groundwater used for domestic supply is a factor that has influenced current property values in the Settlement Class Area.   However, the Settling Parties do agree that extension of the City Water System and the availability of city water service for any future development will eliminate any uncertainty related to the quality and quantity of the domestic water supply, and can be reasonably expected to increase property values within the Settlement Class Area.

13.     Plaintiffs did not seek to recover in the Litigation any past expenses for medical care, treatment or services which had been paid by Medicare, Medicaid, or any other governmental benefit program.   Moreover, reimbursement for any past medical expenses was not at issue in the Litigation.

**C.     The Settlement Negotiations.**

Counsel for the Settling Parties initiated discussions regarding the possibility of settlement in the fall of 2011.  Settlement communications among counsel continued for several months simultaneously with litigation activities including motions, disclosures and discovery. On April 30, 2012, Plaintiffs' counsel met with Defendants' counsel regarding settlement, and later the parties ultimately reached a settlement in principle on May 11, 2012, subject to the final approval of their respective clients.  Subsequently, Plaintiffs' counsel communicated with Plaintiffs regarding the settlement in principle.  Each Plaintiff reviewed and approved its terms, and collectively Plaintiffs directed their counsel to execute and seek to implement the agreement in principle.   Similarly, client representatives of Defendants each reviewed and approved the settlement in principle and directed their counsel to execute and seek to implement the agreement in principle.   To that end, the Settling Parties have prepared documents associated with the proposed settlement, including the substance and form of a notice plan.  Plaintiffs, Defendants, and each of their counsel have concluded that the interests of the Plaintiffs and the proposed Settlement Classes as well as the Defendants would best be served by a settlement of the Litigation on the terms contained in the Class Settlement Agreement.

**D.     Description and Evaluation of The Settlement Terms.**

The Settling Parties have agreed on a compromise and settlement of the Litigation as stated in the Class Settlement Agreement.  Among other items, the Class Settlement Agreement includes:

1.     Funding to extend the City Water System to serve residences that are located within the portions of the Tier 1 and Tier 2 Subareas of the Settlement Class Area that are included within the Future City Water Service Area; funding for construction of piping, meter placement and connection to the City Water System for residences within that area that were served by Class Domestic Wells as of February 14, 2011; and funding of tap fees for thirty-five future connections for new residential development in the Future City Water Service Area.  The Declaration of Mr. Danny Newell, City of Yerington City Manager (Attachment 3), confirms the extent of the Future City Water Service Area, the plans to extend the City Water System subject to City Council approval, and the Settling Parties' expectation that the City will accept Defendants' commitment to fund said costs.

2.     Payments to Property Damage Settlement Class Members to settle claims for damages to their properties and, if applicable, Class Domestic Wells within the Settlement Class Area.

3.     Payments to Medical Monitoring Settlement Class Members to obtain, if they so choose, medical monitoring services from a doctor of their choice; provided, however, there are no express requirements regarding the manner in which an individual Medical Monitoring Settlement Class Member utilizes such a payment.

These items benefit the Settlement Class Members and provide substantial relief to them.  Specifically:

Extension of City Water Service will protect and enhance the property values of the Property Damage Settlement Class Members who now rely on Class Domestic Wells for their domestic water supply.  As noted in the Declaration of Thomas O. Jackson, Jr., Ph.D. (Attachment 4), pp. 5-6, a city water supply, in contrast to a private domestic well, is a safe and reliable source of water and would be perceived as adding value to a property.  In addition,

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169

1  extension of City Water Service removes the possibility of exposure to Hazardous Materials

2  related to the Mine Site through domestic use of groundwater and benefits Medical Monitoring

3  Settlement Class Members.  *Id.*

4        The payments to Property Damage Settlement Class Members are based upon several

5  considerations including, but not limited to, whether the present domestic water supply for a

6  property is a Class Domestic Well or city water service, the costs to install, operate and

7  maintain a private well, and the nature of future property access that a Property Damage

8  Settlement Class Member is asked to provide.  *Id.*, p. 6.  Because the Settling Parties disagree

9  whether the Mine Site has had any impact on property values, the settlement payment amounts

10  do not reflect any agreed-upon loss of property value or stigma.  In light of the substantial

11  regional and national economic factors affecting property values in northwestern Nevada and

12  the other factors identified above, the amounts of the settlement payments per acre in the Tier 1

13  and Tier 2 Subareas and per lot in the Penrose Estates and Grand Estates Subdivisions Subarea

14  and the settlement payment per Class Domestic Well are fair, reasonable and adequate.  *See*

15  Jackson Declaration, pp. 4, 6-7.

16        The payments to Medical Monitoring Settlement Class Members are fair, reasonable

17  and adequate.  *See* Declaration of Allan Kanner, (Attachment 5) ¶¶ 8-11, 13.  The Settling

18  Parties acknowledge that they have an obligation pursuant to 42 U.S.C. § 1395y(b)(2),

19  commonly known as the Medicare Secondary Payer statute, to consider Medicare's interests in

20  connection with this settlement, and they state that they have done so.  Further, the Settling

21  Parties acknowledge that they may not shift the burden for payment for medical care, treatment

22  or services for which Members of the Medical Monitoring Settlement Class have been

23  compensated under the Class Settlement to Medicare or Medicaid.  Class Counsel represents

24  that they have advised or will advise the Members of the Medical Monitoring Settlement Class

25  that, if they choose to spend the settlement payment for medical monitoring services, they may

26  not also seek payment of the cost of such services under Medicare or Medicaid.

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169

In addition, the Class Settlement includes a $45,000.00 fund to be distributed by Class Counsel to Plaintiffs or other individuals who have, in Class Counsel's judgment, significantly contributed to the prosecution of the Litigation.

      **E.**      **Plaintiffs/Class Representatives' Claims, Acknowledgment of Risks, and Benefits of Settlement.**

Plaintiffs believe that the claims asserted in the Litigation have merit.  However, after investigation of Defendants' conduct, Environmental Conditions in the Settlement Class Area, and the actions being taken by government regulatory agencies, Plaintiffs have concluded that there are genuine issues not only regarding Defendants' liability, but also whether the nature and extent of Environmental Conditions harm the Plaintiffs and the Members of the Settlement Classes or their property.  In addition, based on the preliminary work on property value issues, Plaintiffs have concluded that there are genuine issues regarding whether the property values in the Settlement Class Area have been affected in any significant manner by Environmental Conditions as opposed to other factors.  The Class Settlement provides for connection to the City Water System of Settlement Class Area homes that are within the City of Yerington Future City Water Service Area and that now rely on Class Domestic Wells.  In addition, it provides funds for Medical Monitoring Settlement Class Members to obtain medical monitoring, if they choose to do so.  The Class Settlement thereby alleviates any concerns that the Members of the Settlement Classes may have regarding Environmental Conditions or exposure to Hazardous Materials attributable to Mining and Mineral Processing or Response Actions.  Alleviating such concerns has been the principal goal of the Litigation from the outset.

Plaintiffs' counsel who are proposed as Class Counsel recognize and acknowledge the expense and likely duration of continued proceedings necessary to prosecute the Litigation through trial and appeals.  Plaintiffs' counsel have also taken into account the uncertain outcome and risk of any litigation, especially in a complex action such as the Litigation, as well as the difficulties and delays inherent in such litigation.  Plaintiffs' counsel are also mindful of the inherent problems of proof and possible defenses to the claims asserted in the Litigation.

Snell & Wilmer
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169

1    For all of the reasons stated above, Plaintiffs' counsel who are proposed as Class

2   Counsel believe that the settlement set forth in the Class Settlement Agreement confers

3   substantial benefits upon the Settlement Classes.  Based on their evaluation, counsel have

4   determined that the settlement set forth in the Class Settlement Agreement is in the best

5   interests of Plaintiffs/Class Representatives and the Settlement Classes.

6

7   F.    **Defendants' Denials of Wrongdoing and Liability and Acknowledgement of Risks and Benefits of Settlement.**

8    Defendants deny all allegations of wrongdoing, fault, liability or damage to Plaintiffs/

9   Class Representatives and any and all Members of the Settlement Classes.  Defendants deny

10  that either one of them engaged in any wrongdoing or acted improperly in any way with respect

11  to Mining and Mineral Processing or the Response Actions.  Defendants further deny that

12  Mining and Mineral Processing, Response Actions, or Environmental Conditions have caused

13  any harm to the Plaintiffs/Class Representatives or Members of the Settlement Classes.

14  Nevertheless, Defendants acknowledge that a jury could reach a conclusion adverse to the

15  Defendants on one or more of the Plaintiffs' claims.  Defendants believe that the Litigation has

16  no merit, but wish to settle the Litigation on the terms and conditions stated in the Class

17  Settlement Agreement in order to eliminate the burden, risk and expense of protracted and

18  costly litigation and to put the Released Claims to rest finally and forever, without in any way

19  acknowledging any wrongdoing, fault, liability or damage to the Plaintiffs/Class

20  Representatives or any and all Members of the Settlement Classes.

21  G.    **Settling Parties' Stipulation.**

22   In light of the information described above, the Settling Parties agree to compromise

23  and settle the claims of the Plaintiffs/Class Representatives and the Members of the Settlement

24  Classes as provided in the Class Settlement Agreement, and stipulate to submit this settlement

25  for the approval of the Court under Fed. R. Civ. P. 23(e).  In the event the Court declines to

26  certify the Settlement Classes or approve the Class Settlement, or the Settlement is otherwise

27  terminated or cancelled, Defendants retain all rights to oppose certification of any class for the

28  purposes of any further litigation.

Snell & Wilmer

L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169

1    The Settling Parties also request the Court to vacate and suspend all deadlines and

2    hearing and trial dates previously set in this action and to enter an order holding the Litigation

3    in abeyance pending finalization of the Class Settlement.  In the event the Court declines to

4    certify the Settlement Classes or approve the Class Settlement, or the Settlement is otherwise

5    terminated or cancelled, the Settling Parties and their counsel will take such steps as may be

6    appropriate to restore the pre-settlement status of the litigation and reset the deadlines and

7    hearing and trial dates.

8    **III.    Certification of Proposed Settlement Classes.**

9    The Court has not previously been requested to certify a class in this case.  Under the

10   Scheduling Order, dated December 7, 2011 [ECF No. 72], the Plaintiffs' motion seeking class

11   certification would not be filed until November 15, 2012.  Because the Court has not already

12   certified a class, the Court also must determine whether the proposed Settlement Classes satisfy

13   the requirements of Rule 23(a) and (b).  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620

14   (1997).  Where the parties seek class certification and settlement approval at the same time, a

15   court needs to make a "preliminary determination that the proposed class satisfies the criteria

16   set out in Rule 23(a) and at least one of the subsections of Rule 23(b)" as well as a

17   determination regarding the fairness, reasonableness and adequacy of the settlement terms.

18   *See, e.g., Sobel v. Hertz Corp.*, No. 3:06-CV-00545-LRH-RAM, 2011 WL 2559565, at *5 (D.

19   Nev. June 27, 2011).

20   **A.    Proposed Settlement Classes.**

21   For purposes of settlement only, Plaintiffs seek, and Defendants do not object to,

22   certification of two Settlement Classes, one for property damage and one for medical

23   monitoring.  The proposed Property Damage Settlement Class consists of Persons who, on or

24   after February 14, 2011 and prior to the date of final Court approval of the Class Settlement,

25   owned or own real property within the Settlement Class Area.   The proposed Medical

26   Monitoring Settlement Class consists of all natural persons who, on or after February 14, 2011

27   and prior to the date of the final Court approval of the Class Settlement, were or are legal

28

1    residents of the Settlement Class Area.  The allocation formulas for each of the Settlement

2    Classes are set forth in the Class Settlement Agreement (Attachment 1).

3        For purposes of settlement only, Plaintiffs identify, and Defendants do not object to, the

4    boundaries of the class area as those shown on the map that is Exhibit 1 to the Class Settlement

5    Agreement.    In brief, the proposed Settlement Class Area modifies the putative class

6    geographic boundaries described in the Plaintiffs' Second Amended Class Action Complaint

7    [ECF No. 75] to include a limited number of privately-owned parcels in North Sunset Hills

8    immediately north of Paiute Drive and to exclude certain undeveloped parcels contiguous with

9    and to the south of the northeastern boundary of that putative class area.  Based on the Lyon

10   County real property records, the parcels of real property within the Settlement Class Area

11   geographic boundaries include privately-owned developed residential properties, vacant

12   residential lots or undeveloped residential properties, and some agricultural or commercial

13   properties.  Although located within the geographic boundaries of the Settlement Class Area,

14   parcels owned by the United States Department of the Interior - Bureau of Land Management

15   or any other local, state or federal agency or instrumentality are excluded from the Class

16   Settlement.  Parcels owned by Defendants, their current employees, and Peri & Sons Farms,

17   Inc. (d/b/a Desert Pearl Farms LLC) are also excluded from the Class Settlement.

18        **B.    Application of Rule 23 Criteria to Proposed Settlement Classes.**

19       To certify a class under Fed. R. Civ. P. 23, the proponent must demonstrate that all of

20   the criteria in Rule 23(a) are satisfied and that one of the criteria in Rule 23(b) is satisfied.

21   Fed. R. Civ. P. 23(b).  Rule 23(a) imposes four criteria:  (1) the class must be so numerous that

22   joinder of all members is impracticable; (2) there are questions of law or fact common to the

23   class; (3) the claims or defenses of the plaintiffs are typical of the claims or defenses of the

24   class; and (4) the plaintiffs will fairly and adequately protect the interests of the class.  "The

25   Rule's four requirements – numerosity, commonality, typicality, and adequate representation –

26   effectively 'limit the class claims to those fairly encompassed by the named plaintiff's claims.'"

27   *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011).  Class certification pursuant to

28   Rule 23(b)(3), the provision in Rule 23(b) under which Plaintiffs seek certification of the

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169

- 17 -

proposed Settlement Classes, requires that (1) questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.   However, for purposes of certification of a settlement class, a court need not inquire whether the case, if tried, would present intractacable management problems.  *Amchem*, 521 U.S. at 620.

      1. *Numerosity.*

   Numerosity requires a finding that each of the proposed Settlement Classes is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  No specific number of putative class members is required.  *See, e.g., Clark v. Guinn*, No. 2:06-CV-1068-RCJ-RJJ, 2007 WL 1435428, at *25 (D. Nev. May 14, 2007).  In addition, the actual number need not be presented; a reasonable estimate is sufficient.  *Id.*

   Here, Plaintiffs contend that the numerosity requirement for the proposed Property Damage Settlement Class is satisfied because Lyon County property records indicate that the proposed Class Settlement Area includes owners of an estimated 587 parcels of real property.  Approximately 302 of these parcels are privately-owned residential properties.  The privately-owned residential properties may include up to 200 parcels that are served by private wells; the remainder of the developed parcels are currently connected to and served by the City of Yerington Water System.  Plaintiffs further contend that there are one or more residents in each of those homes who have been legal residents of the proposed Settlement Class Area on or after February 14, 2011 and thereby meet the criteria for the proposed Medical Monitoring Settlement Class. Under the standards of the Ninth Circuit, Plaintiffs contend these numbers of owners and legal residents are sufficient to establish numerosity.  *See, e.g., In re Google AdWords Litig.*, No. 5:08-CV-3369 EJD, 2012 WL 28068, at *11 (N.D. Cal. Jan. 5, 2012) (numerosity is generally satisfied if the "potential number of plaintiffs exceeds 40").

      2. *Commonality.*

   To satisfy commonality under Rule 23(a)(2), Plaintiffs must identify at least one question of law or fact common to each putative member of the proposed Settlement Classes.

Snell & Wilmer

L.L.P.

LAW OFFICES

3883 HOWARD HUGHES PARKWAY, SUITE 1100

LAS VEGAS, NEVADA 89169

*Wal-Mart*, 131 S. Ct. at 2556; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). Here, part of Plaintiffs' claims focus on historic operations by Defendants at the Mine Site. Plaintiffs contend that Defendants engaged in abnormally dangerous activities for which they are strictly liable and that Defendants' historic mining and mineral processing activities failed to meet the relevant standards of care, thereby making their actions negligent. Evidence of Defendants' conduct will be common to each class member, and the nature of Defendants' conduct "is capable of classwide resolution." *Wal-Mart*, 131 S. Ct. at 2551. *See also* discussion of the predominance requirement in subsection 5, below.

         3.    *Typicality.*

Typicality under Rule 23(a)(3) means that the claims of the class representatives must be "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, Plaintiffs contend that this requirement is satisfied because, among other things, they and the putative members of both proposed Settlement Classes assert the same claims focusing on the same factual and legal theories. Plaintiffs assert that it is the same conduct by Defendants that has injured each putative class member: primarily, Defendants' allegedly wrongful conduct in emitting, releasing, discharging, handling, storing, transporting, processing, and/or disposing of toxic and hazardous substances and allegedly failing to properly remediate same, which Plaintiffs have alleged impacts all putative class members. Additionally, Plaintiffs contend that the prosecution of separate actions by individual putative class members would potentially result in inconsistent or varying adjudications with respect to such individual putative class members.

         4.    *Adequacy.*

Adequacy under Rule 23(a)(4) requires resolution of two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Here, Plaintiffs assert that they have no conflicts of interest with

putative members of either Settlement Class.[2]  In addition, they assert that they are represented by counsel who have substantial experience in litigating class actions and environmental toxic tort actions and that they have actively participated in this litigation by, among other things, cooperating with a thorough investigation of the claims asserted in the Second Amended Class Action Complaint and prior complaints, making Rule 26(a)(1) disclosures, responding to interrogatories and document requests, and making themselves available for depositions.

### 5.  *Predominance and Superiority.*

Although the Second Amended Class Action Complaint and the prior complaints in this action all seek class certification under Rules 23(b)(1), 23(b)(2) and 23(b)(3), Plaintiffs have determined to seek certification of the two proposed Settlement Classes only under Rule 23(b)(3).  Among other reasons, certification of each proposed Settlement Class only under Rule 23(b)(3) means that each putative member of a Settlement Class will have the opportunity to opt out of the Class Settlement and pursue his/her/its claims separately.

The Rule 23(b)(3) predominance inquiry tests whether the proposed settlement class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623; *Hanlon*, 150 F.3d at 1022.  Settlement benefits cannot form part of the analysis of the relationship between the common and individual issues under Rule 23(b)(3).  Instead, "the examination must rest on 'legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement.'"  *Hanlon*, 150 F.3d at 1022 (quoting *Amchem*, 521 U.S. at 623).

Here, Plaintiffs contend that the interests of the putative members of each proposed Settlement Class are aligned.  As set forth in connection with the element of typicality, above, Plaintiffs assert that the similarity of putative class members' factual and legal theories, as well as the likelihood that individual litigations (if feasible) may engender inconsistent rulings, support class certification.  The Plaintiffs and putative class members all seek relief based on exposure only.  Therefore, the common question of whether there was exposure predominates

---

[2] For additional information regarding the Plaintiffs/Class Representatives, *see* discussion in Section IV, herein.

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169

1  over individual differences as to the amount of exposure, which may vary from well to well or

2  among different areas in the Settlement Class Area, or individual differences as to the impacts

3  of exposure based on differences in medical histories, lifestyles and property use.  In addition,

4  there are no claims for personal injury.  There is no potential conflict between those who have

5  current injuries and those who only have suffered exposure and may experience injuries in the

6  future.  *Hanlon*, 150 F.3d at 1022-23 (exclusion of claims based on personal injury makes

7  settlement class claims based on alleged defect in minivan latch "generally homogenous"); *cf.*

8  *Amchem*, 521 U.S. at 623 (definition of the settlement class as consisting of both persons with

9  current personal injuries and persons who may only develop injuries in the future precluded

10  finding of predominance under Rule 23(b)(3)).

11        Factors to be considered in determining whether a proposed class satisfies

12  Rule 23(b)(3)'s superiority requirement, include "(A) the class members' interests in

13  individually controlling the prosecution or defense of separate actions; (B) the extent and

14  nature of any litigation concerning the controversy already begun by or against class members;

15  (C) the desirability or undesirability of concentrating the litigation of the claims in the

16  particular forum; and (D) the likely difficulties in managing a class action."  Fed. R. Civ. P.

17  23(b)(3).

18        Here, Plaintiffs contend that, because the proposed Class Settlement excludes claims for

19  personal injuries, the stakes are not as high and the individual claims are, relatively speaking,

20  small in comparison to the costs of litigating them.  Consequently, Plaintiffs do not anticipate

21  that many class members would bring individual claims in the absence of a class action.  In

22  addition, there are no individual suits that have been filed concerning the matters at issue in

23  either state or federal court.  Concentration of the claims in this Court is appropriate because

24  the claims all arise in this district.  Finally, as *Amchem* advises, trial manageability issues are

25  not relevant because the proposed classes are settlement classes.  *Amchem*, 521 U.S. at 620.

26        For these reasons, Plaintiffs contend that certification of the proposed Property Damage

27  Settlement Class and Medical Monitoring Settlement Class is proper.  For settlement purposes

28  only, Defendants do not oppose certification of the Property Damage Settlement Class and the

Snell & Wilmer

L.L.P.

LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169

Medical Monitoring Settlement Class as proposed by Plaintiffs. However, Defendants reserve the right to contest certification of a property damage class and/or a medical monitoring class if the Class Settlement is not approved by the Court or the Class Settlement Agreement is otherwise terminated according to its terms.

### IV.   Appointment of Class Counsel and Class Representatives.

Plaintiffs seek Court appointment of their counsel as Class Counsel and of themselves as Class Representatives for the proposed Settlement Classes. Their counsel are attorneys experienced in class actions and environmental toxic tort actions. With the exception of the two minors, Melissa and Cole Lackore, Plaintiffs are each owners of real property in the Settlement Class Area. Plaintiff landowners own property in each of the different Subareas of the Settlement Class Area. Some of them own residences supplied by domestic wells, and others own residences presently supplied by the City of Yerington's municipal water system. Together, Plaintiffs contend that they reflect the potential characteristics of all putative members of the proposed Property Damage Settlement Class. All Plaintiffs, except Suzanne Shape and Timothy Hayden, seek to represent the proposed Medical Monitoring Settlement Class, and they have been legal residents of the Settlement Class Area for at least part of the Settlement Class Period. Therefore, they contend that they reflect the putative members of the proposed Medical Monitoring Settlement Class. For purposes of settlement only, Defendants do not oppose these appointments.

### V.   Compliance with 28 U.S.C. § 1715 and Fed. R. Civ. P. 23(e)(3).

1.      Defendants hereby certify that on September 13, 2012 they will provide the notices of proposed settlement required by 28 U.S.C. § 1715(b) to the Attorney General of the United States, counsel for the NDEP, and the attorneys general of each of the fifteen States in which a potential Member of one or both Settlement Classes is known to reside including, but not limited to, the States of Nevada and California. A report regarding such notices will be filed with the Court no later than seven (7) days prior to the Fairness Hearing.

2.      The Settling Parties represent that their entire agreement is reflected by the Agreed Motion and its attachments including, but not limited to, the Class Settlement

- 22 -

1    Agreement.   The Settling Parties have made no other agreements in connection with the

2    proposed Class Settlement.

3    **VI.**    **Settling Parties' Requests for Approval of Notices, Class Settlement Claims**
              **Administrator, and Procedures.**

4

5    "[T]he mechanics of the notice process are left to the discretion of the court subject only

6    to the broad 'reasonableness' standards imposed by due process." *Lo v. Oxnard European*

7    *Motors, LLC*, No. 11CV1009 JLS (MDD), 2011 WL 6300050, at *7 (S.D. Cal. Dec. 15, 2011)

8    (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975)).   The Settling

9    Parties have prepared a Notice of Class Certification and Settlement to be mailed to Members

10    of the Settlement Classes (Exhibit 9 to the Class Settlement Agreement), and a summary notice

11    of class certification and settlement to be published in the *Mason Valley News*, a newspaper of

12    general circulation in the Settlement Class Area (Exhibit 10 to the Class Settlement

13    Agreement).   Both the notice and the summary notice include each of the items of information

14    specified in Fed. R. Civ. P. 23(c)(2)(B) and use plain, easily understood language.   Therefore,

15    the proposed notices comply with the requirements of that Rule. *See, e.g.,* Fed. Jud. Center,

16    *Manual for Complex Litigation, Fourth*, § 21.31, p. 286, § 21.312, pp. 294-95 (2004).

17    The Settling Parties and the Class Settlement Claims Administrator have developed a

18    mailing list for distribution of the Notice of Class Certification and Settlement based upon the

19    Lyon County, Nevada property tax records.   If notice packages are returned as undeliverable,

20    the Class Settlement Claims Administrator promptly will endeavor to determine a forwarding

21    address and re-mail the notice package.   The Settling Parties anticipate that most Members of

22    the Property Damage Settlement Class and the Medical Monitoring Settlement Class will

23    receive a copy of the Notice via U.S. Mail delivered to their residences.   Because the Class

24    Settlement Period is relatively short and recent, determining the correct mailing address for a

25    potential Member of one or both Settlement Classes should not be difficult.   In combination

26    with the publication of a summary notice in the *Mason Valley News*, the proposed method of

27    notice is the "best notice practicable under the circumstances." *Id.* at § 21.311, pp. 287-88,

28    § 21.312, p. 294.   The Settling Parties propose to file with the Court an appropriate affidavit(s)

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169

or declaration(s) from the Class Settlement Claims Administrator with respect to mailing and publishing notice to the Settlement Classes no later than seven (7) days prior to the Fairness Hearing.

The Settling Parties propose to mail the Notice within five (5) business days after entry of the Preliminary Approval Order and publish the summary notice twice in the *Mason Valley News*, initially within five (5) business days after entry of the Preliminary Approval Order and then ten (10) business days after the initial publication.  The Settling Parties propose a period for opt-out or exclusion requests and objections of sixty (60) days from the date on which the notices are initially mailed and published. The appropriate duration of the exclusion period depends upon the specific circumstances of the case.  *See, e.g.,* Fed. Jud. Center, *Judge's Class Action Notice and Claims Process Checklist and Plain Language Guide*, p. 4 (2010) ("A minimum of 30 days is necessary . . . with 60-90 days preferred").  The Settling Parties propose that opt-out or exclusion requests must be mailed to the Class Settlement Claims Administrator and that they be considered timely if postmarked on or before the expiration of the 60‑day period.  For objections, the Settling Parties propose that anyone objecting be required to mail the objection to the Court and to an attorney for each Settling Party and that they be considered timely if postmarked on or before the expiration of the 60-day period.  After close of the period established by the Court for exclusion requests or objections, and no later than seven (7) days prior to the Fairness Hearing, the Settling Parties propose to file with the Court a report regarding the exclusion requests received and objections filed.

Defendants have engaged Rust Consulting, Inc. ("Rust Consulting"), an experienced class settlement administrator, to assist with class notice and administration of the Class Settlement if it is finally approved by the Court.  A copy of Rust Consulting's qualifications is Attachment 6.  Plaintiffs have consented to the engagement of Rust Consulting.  Rust Consulting will assist with settlement class notice by participating in development of a mailing list for potential Members of the Settlement Classes whose addresses can be determined with reasonable effort, mailing individual notices, re-mailing returned notices to forwarding addresses, and researching addresses for returned notices without forwarding addresses.  Rust

Consulting will also place the summary publication notice with the *Mason Valley News* for publication. Rust Consulting will maintain both an onsite office and a remote call center with persons trained to respond to questions from potential Members of one or both Settlement Classes regarding the provision of class settlement notice, eligibility for participation in the two Settlement Classes, the mechanisms and deadlines for submission of exclusion requests, objections, and proof of claim and release forms and related forms, and the terms of the Class Settlement. After the Judgment is Final, Rust Consulting will implement the portion of the Class Settlement concerning distribution of payments to individual Members of one or both Settlement Classes by, among other things, confirming eligibility, calculating payment amounts, and mailing checks.

The extension of the City Water System is a critical part of the overall Class Settlement. It is important for the successful extension of the City Water System to secure the maximum possible participation of potential Members of the Property Damage Settlement Class eligible for connection to the City Water System. Counsel for the Settling Parties have considered various means to ensure the desired level of participation and have consulted with Rust Consulting regarding methods of delivering notice and distributing information within the community to explain the settlement and encourage participation. As a result, the Settling Parties have concluded that the best approach to achieve the mutual goal of maximum participation in the extended City Water System is for the Class Settlement Claims Administrator to include proof of claim and release forms and environmental covenant and access agreement forms in the Class Settlement Notice package to be mailed to potential Members of the Settlement Classes and request their return by the same deadline as opt-out or exclusion requests. The proof of claim and release forms and environmental covenant and access agreement forms are Exhibits 4, 5 and 6 to the Class Settlement Agreement. The Settling Parties therefore request the Court's approval to include these forms in the Class Settlement Notice package and to request their return within the same 60-day period provided for submission of exclusion requests and objections.

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169

**VII.**   **Preliminary Approval Order.**

The Settling Parties request an immediate entry of an order (the "Preliminary Approval Order"), substantially in the form of Exhibit 8 to the Class Settlement Agreement, that:

1.      Certifies the Settlement Classes pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), appoints Plaintiffs as Class Representatives, appoints Plaintiffs' counsel as Class Counsel, and preliminarily approves the settlement set forth in the Class Settlement Agreement;

2.      Sets a hearing as required by Fed. R. Civ. P. 23(e) at which the Court will determine whether to make findings that this settlement is fair, reasonable and adequate and enter an order finally certifying the proposed Settlement Classes and approving this settlement (the "Fairness Hearing"); provided, however, that the Fairness Hearing will be set no earlier than ninety (90) days after the later of the dates on which the appropriate federal and state officials are served with the notice required under 28 U.S.C. § 1715(b);

3.      Approves for mailing to potential Members of the Settlement Classes within five (5) business days of entry of the Preliminary Approval Order of (i) a Notice of Class Certification and Settlement, substantially in the form of Exhibit 9 to the Class Settlement Agreement, which will include the general terms of the settlement set forth in the Class Settlement Agreement (Attachment 1 to the Agreed Motion) and the date of the Fairness Hearing, and (ii) a proof of claim and release form and environmental covenant and access agreement forms, as applicable (substantially in the form of Exhibits 4, 5 and 6 to the Class Settlement Agreement);

4.      Approves for publication in the *Mason Valley News* initially within five (5) business days of entry of the Preliminary Approval Order, and then ten (10) business days later, of a summary notice of class certification and settlement substantially in the form of Exhibit 10 to the Class Settlement Agreement, which will include the general terms of the settlement set forth in the Class Settlement Agreement (Attachment 1 to the Agreed Motion) and the date of the Fairness Hearing;

- 26 -

Snell & Wilmer

L.L.P.

LAW OFFICES

3883 HOWARD HUGHES PARKWAY, SUITE 1100

LAS VEGAS, NEVADA 89169

5.      Approves the retention of a third party class settlement administrative service, Rust Consulting, Inc., 625 Marquette Avenue, Suite 880, Minneapolis, Minnesota 55402, as Class Settlement Claims Administrator, to assist with Settlement Class Notice and, if the Class Settlement is finally approved at the Fairness Hearing, settlement administration;

6.      Establishes a period of sixty (60) days from initial mailing and publication of Settlement Class notice and an appropriate mechanism by which any Person who wishes to be excluded from or opt out of the Settlement Classes may do so;

7.      Establishes a period of sixty (60) days from initial mailing and publication of Settlement Class notice by which any Member of a Settlement Class who intends to seek benefits under the Class Settlement Agreement must submit the required documentation and approves the documentation to be submitted and means for submission;

8.      Establishes a period of sixty (60) days from initial mailing and publication of Settlement Class notice and an appropriate mechanism by which any Member of a Settlement Class who wishes to object to the fairness of the Class Settlement may do so;

9.      Establishes, after close of the period established by the Court for submission of exclusion requests or objections, a date at least seven (7) days prior to the Fairness Hearing, by which the Settling Parties will file with the Court an appropriate affidavit(s) or declaration(s) with respect to mailing or publishing notice to the Settlement Classes, a report regarding notices under 28 U.S.C. § 1715(b), and a report regarding the exclusion requests received and objections filed; and

10.      Vacates all deadlines and hearing and trial dates in the Litigation, subject to resetting if the Class Settlement is not finally approved or is otherwise terminated or cancelled.

**VIII.   Retention of Jurisdiction.**

The Settling Parties further request that, if the Agreed Motion is granted and the Class Settlement is finally approved after the Fairness Hearing, the Court retain jurisdiction with respect to the implementation and enforcement of the terms of the Class Settlement Agreement.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONCLUSION**

The Settling Parties respectfully request the Court to grant the Agreed Motion, enter the Preliminary Approval Order (Exhibit 8 to the Class Settlement Agreement), and set a Fairness Hearing for final approval of the Settlement Classes and the Class Settlement no earlier than ninety days after the later of the dates on which the appropriate federal and state officials are served with notice under 28 U.S.C. § 1715(b).

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169

1    DATED:  September 12, 2012.

2

3                                              By: _s/ Allan Kanner_____

4                                              **KANNER & WHITELEY, L.L.C.**
                                               Allan Kanner, Esq.
5                                              Elizabeth B. Petersen, Esq.
                                               David A. Pote, Esq.
6                                              701 Camp St.
                                               New Orleans, LA  70130
7                                              Phone:  (504) 524-5777

8                                              **ROBINSON, BELAUSTEGUI, SHARP &**
9                                              **LOW**
                                               Kent R. Robison, Esq.
10                                             Kristen Martini, Esq.
                                               71 Washington St.
11                                             Reno, NV  89503
                                               Phone:  (775) 329-3151
12

13                                             **GERMAN RUBENSTEIN LLP**
                                               Joel Rubenstein, Esq.
14                                             Steven J. German, Esq.
                                               19 W. 44th St., Ste. 1500
15                                             New York, NY  10036
                                               Phone:  (212) 704.2020
16

17                                             **JANET, JENNER & SUGGS LLC**
                                               Howard A. Janet, Esq.
18                                             Robert K. Jenner, Esq.
                                               Kenneth M. Suggs, Esq.
19                                             Leah K. Barron, Esq.
                                               1777 Reisterstown Rd., Ste. 165
20                                             Baltimore, MD  21208
                                               Phone:  (410) 653-3200
21

22                                             Attorneys for Plaintiffs and Settlement Classes

23

24

25

26

27

28

- 29 -

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169

1

2
                      By: *s/ William J. Duffy*

3

4
                       **DAVIS GRAHAM & STUBBS LLP**
                       William J. Duffy (*Pro Hac Vice*)

5
                       Jonathan W. Rauchway (*Pro Hac Vice*)
                       Jeffrey R. Pilkington (*Pro Hac Vice*)

6
                       1550 17th Street, Suite 500
                       Denver, Colorado  80202-1500

7
                       Phone:  303-892-9400

8
                       **SNELL & WILMER LLP**

9
                       Greg Brower, NV Bar No. 5232
                       Joshua D. Cools, NV Bar No. 11943

10
                       3883 Howard Hughes Parkway, Suite 1100
                       Las Vegas, Nevada  89169

11
                       Phone:  (702) 784-5200

12
                       Attorneys for Defendants

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169