| ✓ FILED | ___ RECEIVED |
|---|---|
| ___ ENTERED | ___ SERVED ON |
| | COUNSEL/PARTIES OF RECORD |

OCT 2 1 2013

CLERK US DISTRICT COURT
DISTRICT OF NEVADA

BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

|  |  |
|---|---|
| PHILIP ROEDER; ANNA ROEDER; LISA LACKORE, individually and as mother and natural guardian of MELISSA LACKORE and COLE LACKORE, minors; SUZANNE SHAPE; GREGORY SHAPE; CLAUDIA HAYDEN and TIMOTHY HAYDEN; On Behalf of Themselves And All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>ATLANTIC RICHFIELD COMPANY and BP AMERICA INC.<br><br>                    Defendants. | Case No. 3:11-CV-00105-RCJ-WGC<br><br><br><br>**JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE** |

On October 21, 2013, this matter came before the Court for hearing, pursuant to the Supplemental Preliminary Approval Order of this Court, on the application of the Settling Parties for approval of the settlement of this Litigation as set forth in the Agreed Motion for Final Approval of Settlement Classes and Class Settlement and Entry of Judgment, dated October 15, 2013 (the "Motion for Entry") [ECF No. ___].  Due and adequate notice having been given to the Settlement Classes as required by the Supplemental Preliminary Approval Order and the Court's order dated February 25, 2013, and the Court having considered all papers filed and proceedings had herein, and otherwise being fully informed in the premises and good cause appearing,

THEREFORE, THE COURT MAKES THE FOLLOWING FINDINGS AND CONCLUSIONS OF LAW AND IT IS ORDERED, ADJUDGED AND DECREED as follows:

2824305.1

1        1.    This Judgment adopts the definitions in the Amended Class Settlement

2    Agreement attached to the Second Agreed Motion for Certification of Settlement Classes and

3    Preliminary Approval of Class Settlement, dated July 10, 2013 (the "Second Agreed Motion")

4    [ECF No. 108], and all capitalized terms used herein and not defined will have the same

5    meanings ascribed to them in the Amended Class Settlement Agreement.

6        2.    This Court has jurisdiction over the subject matter of this Litigation and over all

7    parties to this Litigation, including all Members of the Settlement Classes.

8    **Class Certification**

9        3.    Pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), the Court hereby finally

10   certifies, for purposes of effectuating this settlement only,

11       a.    a Property Damage Settlement Class consisting of (i) all Persons who,

12   on or after February 14, 2011 and up to and including June 10, 2013, owned or own property

13   within the geographic area depicted on Exhibit 1 to the Amended Class Settlement Agreement

14   but do not own a Class Domestic Well on the date of final Court approval of the Class

15   Settlement, and (ii) all Persons who, on the date of final Court approval of the Class

16   Settlement, own real property within the geographic area depicted on Exhibit 1 to the

17   Amended Class Settlement Agreement on which a Class Domestic Well is located.  This class

18   excludes the United States Department of the Interior – Bureau of Land Management, any

19   other local, state or federal governmental agency or instrumentality, Defendants, Defendants'

20   current employees, and Peri & Sons Farms, Inc. (d/b/a Desert Pearl Farms LLC); and

21       b.    a Medical Monitoring Settlement Class consisting of all natural persons

22   who, on or after February 14, 2011 and up to and including June 10, 2013, were or are legal

23   residents of the area within the geographic area depicted on Exhibit 1 to the Amended Class

24   Settlement Agreement, excluding, however, residents of parcels owned by the United States

25   Department of the Interior – Bureau of Land Management, any other local, state or federal

26   governmental agency or instrumentality, Defendants, Defendants' current employees, and

27   Peri & Sons Farms, Inc. (d/b/a Desert Pearl Farms LLC).

28   These two classes are the Settlement Classes.

4.     For purposes of effectuating this Settlement only, the Court adopts as final its preliminary findings and conclusions that each of the Settlement Classes satisfies the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3).  This determination is based upon the reasons set forth below.

a.     The Property Damage Settlement Class includes owners of 651 parcels of real property including approximately 296 privately-owned residential properties, up to 177 of which are served by Class Domestic Wells.  There are nine (9) Class Domestic Wells located on nine vacant parcels with, at most, non-residential structures constructed on said parcels.  Thus, a total of 186 Class Domestic Wells are believed to be located in the Settlement Class Area.  The Medical Monitoring Settlement Class includes each legal resident of these 296 homes.  Joinder is not practicable for this potential number of plaintiffs, and the numerosity requirement is therefore satisfied.  *See, e.g., Clark K. v. Guinn*, No. 2:06-CV-1068-RCJ-RJJ, 2007 WL 1435428, at *25 (D. Nev. May 14, 2007).

b.     With respect to the commonality requirement of Rule 23(a)(2), the Court must identify at least one question of law or fact common to each putative member of the Settlement Classes.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).  The Court notes that such questions in this case include whether Defendants engaged in abnormally dangerous activities for which they are strictly liable and whether Defendants' historic mining and mineral processing activities failed to meet the relevant standards of care thereby making their actions negligent.  Evidence of Defendants' conduct will be common to each class member, and the nature of Defendants' conduct "is capable of classwide resolution."  *Wal-Mart*, 131 S. Ct. at 2551.

c.     With respect to the typicality requirement of Rule 23(a)(3), the Court finds that the claims of the Plaintiffs/Class Representatives and the claims of absent Members of the Settlement Classes focus on the same aspects of the Defendants' activities and seek the same or similar relief.  Although Plaintiffs/Class Representatives' claims may not be identical to the claims of absent class members in all aspects, their claims are "reasonably co-extensive

1    with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.

2    1998).

3            d.      With respect to the adequacy requirement of Rule 23(a)(4), the Court

4    finds that seven Plaintiffs/Class Representatives, Philip Roeder, Anna Roeder, Lisa Lackore,

5    Claudia Hayden, Timothy Hayden, Suzanne Shape and Gregory Shape, owned or own

6    residential property in the Settlement Class Area during the period beginning on February 14,

7    2011.  This group of Plaintiffs/Class Representatives includes property owners with Class

8    Domestic Wells and property owners who have been served by a community water system.

9    Properties owned by one or more of these seven Plaintiffs/Class Representatives are located in

10   each of the three Subareas in the Settlement Class Area.  They will or have fairly and

11   adequately protect(ed) the interests of the Property Damage Settlement Class.  In addition, the

12   Court finds that Philip Roeder, Anna Roeder, Lisa Lackore, Cole Lackore, Melissa Lackore,

13   Claudia Hayden, and Gregory Shape are or were legal residents of the Settlement Class Area

14   during the period beginning on February 14, 2011, and they will or have fairly and adequately

15   protect(ed) the interests of the Medical Monitoring Settlement Class.

16           e.      The Court also finds that Class Counsel satisfy the requirements

17   outlined in Fed. R. Civ. P. 23(g)(1).  In addition, the Court finds that Class Counsel have fairly

18   and adequately represented and protected the interests of the Settlement Class Members in

19   negotiating the settlement.

20           f.      The Court finds that the Settlement Classes meet the requirements of

21   Fed. R. Civ. P. 23(b)(3).  First, with respect to predominance, both of the Settlement Classes

22   avoid the problems and conflicts noted by the Supreme Court in invalidating the class

23   settlement in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 (1997).  The Class

24   Settlement does not include claims for existing personal injuries.  The settlement proposed for

25   each of the Settlement Classes is based solely on Plaintiffs' common claims of exposure.

26   Therefore, the question of whether there was exposure predominates over individual

27   differences as to the amount of exposure, which may vary from well to well, or among

28   different areas in the Class Settlement Area, and individual differences as to potential impacts

1  of exposure which may vary based on property uses, medical histories and lifestyles.  Second,

2  with respect to superiority, the Court finds that the Settlement Classes are superior to other

3  methods for the fair and efficient settlement of the claims against the Defendants.  The claims

4  concern properties located, and actions that occurred, in this district, and, therefore, all of the

5  claims arise in this district.  Because the Class Settlement excludes claims for personal

6  injuries, the stakes are not as high and the individual claims are, relatively speaking, small.

7  The lack of individual actions that have been filed concerning the matters at issue and the

8  relatively small number of putative Members of the Settlement Classes who have submitted

9  exclusion requests support this finding.

10       5.       In summary, with respect to both of the Settlement Classes, this Court finds and

11  concludes that the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) are satisfied in that:

12  (a) the Members of the Settlement Classes are sufficiently numerous that joinder of all

13  Settlement Class Members in this Litigation is impracticable; (b) there are questions of fact

14  and law common to the Settlement Classes; (c) the claims of the Plaintiffs/Class

15  Representatives Philip Roeder, Anna Roeder, Lisa Lackore, Cole Lackore, Melissa Lackore,

16  Claudia Hayden, Timothy Hayden, Suzanne Shape, and Gregory Shape are typical of the

17  claims of the Members of the Settlement Classes; (d) the Plaintiffs/Class Representatives and

18  their counsel have fairly and adequately represented and protected the interests of all Members

19  of the Settlement Classes; (e) there are questions of fact or law common to the claims of the

20  Members of the Settlement Classes which predominate over individual questions; and (f) a

21  class action is superior to other methods for the fair and efficient settlement of the claims

22  against Defendants Atlantic Richfield Company and BP America Inc. that were or could have

23  been asserted in this Litigation.

24  **Notice to Class and Under 28 U.S.C. §1715**

25       6.       A notice of settlement of a class action was provided by first class U.S. Mail to

26  those putative Members of the Settlement Classes who currently reside in the Settlement Class

27  Area and to those putative Members of the Settlement Classes residing outside of the

28  Settlement Class Area whose addresses could be identified with reasonable effort by the

1   Settling Parties and the Class Settlement Claims Administrator, Rust Consulting, Inc.  A total

2   of 664 individual notices were mailed on March 4, 2013 and on later dates as additional

3   addresses of putative Settlement Class Members were identified.

4        7.      A supplemental notice of settlement of a class action was provided by first class

5   U.S. Mail to those putative Members of the Property Damage Settlement Class who own real

6   property in the Settlement Class Area on which a Class Domestic Well is located.  The

7   supplemental notice explained the amended terms of the proposed Class Settlement applicable

8   to putative Members of the Property Damage Settlement Class who own a Class Domestic

9   Well and their rights and options.  Because the amended terms did not apply to or change the

10  settlement terms applicable to other putative Members of the Settlement Classes, the Court

11  approved supplemental notice only to putative Members of the Property Damage Settlement

12  Class who own real property in the Settlement Class Area on which a Class Domestic Well is

13  located.  A total of 186 individual notices were mailed on July 30, 2013.

14       8.      A summary notice of settlement of a class action was published twice (on

15  March 6, and 13, 2013) in the *Mason Valley News*, and once (on March 6, 2013) in the *Reno-

16  Gazette Journal*, two newspapers distributed and having wide readership in the Settlement

17  Class Area.

18       9.      A supplemental summary notice of settlement of a class action directed to

19  owners of Class Domestic Wells was published three times (on August 7 and 14 and

20  September 4, 2013) in the *Mason Valley News* and once (on August 5, 2013) in the *Reno-

21  Gazette Journal*.  Because the amended terms do not apply to or change the settlement terms

22  applicable to other putative Members of the Settlement Classes, the Court approved

23  supplemental summary publication notice directed only to putative Members of the Property

24  Damage Settlement Class who own real property in the Settlement Class Area on which a

25  Class Domestic Well is located.

26       10.     The notices and supplemental notices of settlement of a class action given to the

27  putative Members of the Settlement Classes included individual notice to all putative Members

28  of one or both Settlement Classes who could be identified with reasonable effort.  These

1   notices provided the best notice practicable under the circumstances to all Persons entitled to

2   such notice.  These notices fully satisfy the requirements of the Federal Rules of Civil

3   Procedure and the requirements of due process.

4          11.     Defendants served notice as required by the Class Action Fairness Act, 28

5   U.S.C. §1715 ("CAFA"), on U.S. Attorney General Eric Holder on September 13, 2012.

6   Defendants also served similar notices on September 13, 2012 on appropriate state officials for

7   each of the sixteen states in which putative settlement class members reside.  Supplemental

8   notices were served on Attorney General Holder and appropriate state officials on

9   November 16, 2012, March 1, 2013, June 3, 2013, and July 12, 2013.  Ninety days or more

10  have passed since the last of the CAFA notice and supplemental CAFA notices were served.

11  No official has responded to the CAFA notice and supplemental CAFA notices or taken action

12  to oppose the Class Settlement.

13  **Approval of Settlement**

14         12.     Factors that the Ninth Circuit has held should be considered when a trial court

15  evaluates a proposed class settlement for fairness, reasonableness and adequacy include:

16         (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and
17         likely duration of further litigation; (3) the risk of maintaining class action status
           throughout the trial; (4) the amount offered in settlement; (5) the extent of
18         discovery completed and the stage of the proceedings; (6) the experience and
           views of counsel; (7) the presence of a governmental participant; and (8) the
19         reaction of the class members of the proposed settlement.

20  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *Churchill Vill.,*

21  *L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  Another iteration of factors to be

22  considered identifies the following:

23         (1) likelihood of recovery or success; (2) amount and nature of discovery or
           evidence; (3) settlement terms and conditions; (4) recommendation and
24         experience of counsel; (5) future expense and likely duration of litigation;
           (6) recommendation of neutral parties, if any; (7) number of objectors and nature
25         of objections; and (8) the presence of good faith and the absence of collusion.

26

27  *Riker v. Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012, at *2 (D. Nev. Oct. 28,

28  2010) (*citing* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:43 (4th ed.

1  2002)).  These factors are not exhaustive.  *In re Bluetooth Headset Prods. Liab. Litig.,*

2  654 F.3d at 946-47.  "The relative degree of importance to be attached to any particular factor

3  will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief

4  sought, and the unique facts and circumstances presented by each individual case."  *Officers*

5  *for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco,* 688 F.2d 615, 625

6  (9th Cir. 1982).  It is the settlement as a whole, rather than its individual component parts, that

7  the Court examines for overall fairness.  *Staton v. Boeing Co.,* 327 F.3d 938, 960 (9th Cir.

8  2003).

9         13.     Consideration of these factors in light of the factual record of this Litigation

10  demonstrates that the proposed settlement is fair, reasonable and adequate.

11         *Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome in Doubt.*

12         14.     This Litigation was commenced on February 14, 2011 when Plaintiffs/Class

13  Representatives filed a complaint in this Court on behalf of themselves and a putative class

14  seeking damages for alleged harm to their property and a putative class seeking medical

15  monitoring.  Plaintiffs/Class Representatives alleged that arsenic, uranium, and other

16  hazardous substances had been and were being released to the environment from a facility

17  formerly owned or operated by Defendants.  Second Amended Class Action Complaint [ECF

18  No. 75], at ¶¶ 22-23.  Plaintiffs/Class Representatives further alleged that these hazardous

19  substances entered the groundwater beneath the Mine Site, had migrated, and were present in

20  groundwater beneath the putative class members' properties.  [ECF No. 75 at ¶¶ 25, 29-31].

21  They also alleged that contaminants were entrained in dust that had blown onto the properties

22  of the putative class members.  [ECF No. 75 at ¶¶ 36-38].  The relief sought included various

23  types of property damages and payment for medical monitoring.  [ECF No. 75 at pp. 34-35].

24  At the time the settlement was reached, only Plaintiffs/Class Representatives' claims for

25  trespass, nuisance, negligence, battery, and strict liability had been allowed to proceed to

26  discovery.  [ECF No. 75 at ¶¶ 69-134].  Plaintiffs/Class Representatives' claims for nuisance

27  per se, negligence per se, unjust enrichment, fraudulent concealment, and negligent

28

1  misrepresentation had all been dismissed by the Court under Fed. R. Civ. P. 12(b)(6).  Order

2  [ECF No. 50], p. 16; Order [ECF No. 82].

3        15.      Defendants Atlantic Richfield and BP America Inc. have denied any liability to

4  Plaintiffs/Class Representatives and the putative classes, and they have denied that Plaintiffs/

5  Class Representatives and the putative classes suffered any injury.  *See* Answer [ECF No. 76].

6  Defendants have vigorously pursued their legal and factual defenses.  *See* Defendants' Partial

7  Motion to Dismiss [ECF Nos. 28 and 48] and Defendants' Response in Opposition to

8  "Plaintiffs' Motion for Limited Reconsideration" [ECF No. 59].

9        16.      Rule 26(a)(1) disclosures and written discovery have occurred.  At the time of

10  settlement, the parties had scheduled depositions of Plaintiffs/Class Representatives and had

11  begun production and review of voluminous documents from multiple sources and covering

12  several decades that were identified in Defendants' disclosures and discovery responses.

13        17.      Based upon their pretrial investigations and preparation, the parties identified

14  certain evidence that has influenced their decision to enter into the proposed settlement.  The

15  Court agrees that this evidence would be significant at trial on issues of both liability and

16  damages.  This evidence indicates that Plaintiffs/Class Representatives and the Members of the

17  Settlement Classes are not certain to recover any relief.  Similarly, this evidence does not

18  remove the risk of an adverse outcome for the Defendants.  This evidence includes:

19            a.      Defendant Atlantic Richfield worked with the Nevada Division of

20  Environmental Protection (the "NDEP") and is now working with the United States

21  Environmental Protection Agency (the "EPA") to respond to potential Releases from the Mine

22  Site.  Activities performed include, but are not limited to:  implementation of a community

23  bottled water supply program; periodic sampling and monitoring of groundwater and

24  residential domestic water wells; surface and subsurface soil sampling; radiological surveys;

25  implementation of significant interim removal actions; periodic air monitoring; evaluation of

26  effectiveness of existing systems to prevent offsite migration of contaminated groundwater;

27  and preparation of a human health risk assessment.  These activities have been and are being

28  overseen by either NDEP pursuant to its statutory authority under N.R.S. §§ 445A.300 to

1    445A.730 and N.A.C. §§ 445A.070 to 445A.348 and/or EPA pursuant to its statutory authority

2    under the Comprehensive Environmental Response, Compensation and Liability Act,

3    42 U.S.C. §§ 9604, 9606(a), 9607 and 9622.

4                    b.         Beginning in 2002, Defendant Atlantic Richfield has entered into

5    multiple administrative orders on consent with NDEP and EPA for the Mine Site for

6    performance of the investigation and response actions described. *See* Administrative Order on

7    Consent for Yerington Mine Site with NDEP, dated October 25, 2002; Administrative Order

8    on Consent and Settlement Agreement for Removal Action and Past Response Costs, U.S.

9    EPA Region IX, CERCLA Docket No. 09-2009-0010, ¶¶ 17-23.  In addition, CERCLA

10   activities have occurred under a Unilateral Administrative Order for Initial Response

11   Activities, U.S. EPA Region IX, CERCLA Docket No. 9-2005-0011, and an Administrative

12   Order for Remedial Investigation and Feasibility Study, U.S. EPA Region IX, CERCLA

13   Docket No. 9-2007-0005 ("RI/FS AO").

14                   c.         Defendants contend that Atlantic Richfield is in compliance with all

15   requirements of these Administrative Orders, and Plaintiffs have found no evidence to the

16   contrary.

17                   d.         While the Mine Site may be a source of some metals or other substances

18   found in offsite groundwater, metals and/or other substances found in groundwater underlying

19   portions of the Settlement Class Area also may reflect sources other than historic Mining and

20   Mineral Processing conducted by Defendant Atlantic Richfield and its predecessors.  Some

21   measured levels of metals and other substances are present as natural background

22   concentrations due to the highly mineralized nature of the local geology.  In addition, some

23   metals and other substances are due to operations conducted at the Mine Site by entities not

24   parties to this Litigation that operated after Defendant Atlantic Richfield sold the property in

25   1982.

26                   e.         Putative class members living in the Penrose Estates and Grand Estates

27   Subdivisions are supplied by the City of Yerington Water System and therefore have no

28   ongoing exposure to any groundwater contamination regardless of its sources.

1        f.      Since 2004, Defendant Atlantic Richfield has offered bottled water to all

2    putative class members who depend upon private domestic wells for drinking water where the

3    well water approaches or exceeds a Maximum Contaminant Level under the Federal Safe

4    Drinking Water Act.

5        g.      From January 2005 through March 2008, Defendant Atlantic Richfield

6    conducted air monitoring at the Mine Site under the supervision of the EPA.  Data collected

7    include, but are not limited to:  meteorological data such as wind speed and direction,

8    precipitation and temperature; 24-hour average concentrations in high volume samplers for

9    particulates, inorganic chemicals and radiochemicals; hourly average concentration samples

10   for PM-10 (particulate matter less than 10 micrometers in diameter); and metal samples during

11   dust events.  Among other things, the data demonstrated that upwind and downwind PM-10

12   concentrations are similar to regional background concentrations and that both lead and PM-10

13   concentrations meet the National Ambient Air Quality Standards.  *See* excerpt from

14   February 25, 2011 Baseline Human Health Risk Assessment for the Inhalation Pathway

15   (Revision 1), Yerington Mine Site, Lyon County, Nevada, RI/FS AO (Attachment 2 to the

16   Agreed Motion [ECF No. 91]), p. ES-2.

17       h.      The February 25, 2011 Baseline Human Health Risk Assessment for the

18   Inhalation Pathway performed by a consultant to Defendant Atlantic Richfield and approved

19   by the EPA concluded, among other things, that (i) "results of the chronic and acute [Human

20   Health Risk Assessment] do not indicate a potential for increased health effects associated

21   with metals and radiochemicals in dust from the [Mine Site]" and (ii) "inhalation of PM-10,

22   regardless of the source (background or Site-related), is unlikely to result in adverse health

23   conditions." *Id.*, p. ES-2.

24       i.      Based upon the available evidence, Defendants contend that there is not

25   a strong likelihood that any Member of the Medical Monitoring Settlement Class will require

26   significant future medical care related to the events at issue in the Litigation.  Plaintiffs have

27   no evidence to the contrary.

28

1     j.     In their discovery responses, Plaintiffs reported no changes in the uses

2  they make of their properties in the Settlement Class Area due to dust or groundwater

3  contamination.

4     k.     Property values in the Settlement Class Area are depressed when

5  compared with values in prior years when northwestern Nevada was experiencing substantial

6  economic growth.  The Lyon County, Nevada website reports Lyon County is the third most

7  economically stressed county in the United States with populations of at least 25,000.  The

8  reported unemployment rate (December 2010) is 18.7%, the highest at that time in Nevada.

9  The reported foreclosure rate is 1:66, the highest in Nevada.  *See* Lyon County, Nevada

10  http://www.lyon-county.org/index.aspx?NID=31

11     l.     The Settling Parties do not agree whether the presence of metals and

12  other substances in groundwater used for domestic supply is a factor that has influenced

13  current property values in the Settlement Class Area.  However, the Settling Parties do agree

14  that extension of the City Water System and the availability of city water service for any future

15  development will eliminate any uncertainty related to the quality and quantity of the domestic

16  water supply, and can be reasonably expected to increase property values within the Settlement

17  Class Area.

18     m.     Plaintiffs did not seek to recover in the Litigation any past expenses for

19  medical care, treatment or services which had been paid by Medicare, Medicaid, or any other

20  governmental benefit program.  Moreover, reimbursement for any past medical expenses was

21  not at issue in the Litigation.

22     18.     It is also clear to the Court that the parties could reasonably conclude that there

23  are serious disputed questions of law and fact that could significantly impact the further

24  litigation and trial of this case.  These questions would have been the subject of extensive

25  discovery and are hotly contested.  Many of these issues are highly technical and will involve a

26  battle of the experts.  These issues include, among others:  (1) how much of the metals or other

27  substances found in groundwater is naturally occurring; (2) how much of the metals or other

28  substances found in groundwater is attributable to nonparties, and whether that will reduce any

1    share of responsibility that could be allocated to Defendants; (3) whether Defendants violated

2    any standards of care or regulations applicable at any time when contaminants were released

3    from the Mine Site; and (4) how much of the alleged decrease in property values is due to the

4    regional and national economy as opposed to the Mine Site.

5           19.      Based on the disclosures, discovery and pretrial proceedings to date, and after

6    further investigating Defendants' Mining and Mineral Processing and Response Actions, the

7    Environmental Conditions, and possible damages suffered by the Settlement Classes, the

8    Plaintiffs/Class Representatives and their counsel have concluded that a jury could reach a

9    conclusion at trial adverse to the Plaintiffs/Class Representatives and the Members of the

10    Settlement Classes.

11           20.      Although Defendants deny all allegations of wrongdoing, fault, liability or

12    damage to Plaintiffs/Class Representatives and any and all Members of either Settlement

13    Class, they acknowledge that there is a risk that a jury could reach a conclusion at trial adverse

14    to Defendants.

15           21.      In this Court's view, after reviewing the entire matter, there are several

16    apparently undisputed facts as well as serious disputed questions of law and fact that place the

17    outcome of this Litigation, if tried rather than settled, in substantial doubt.  This Court concurs

18    with the parties and their counsel that there is risk for each side of an adverse outcome at trial.

19         *Proposed Settlement Was Fairly and Honestly Negotiated.*

20           22.      The proposed settlement is the result of genuine arms-length negotiations

21    between the parties.  The negotiations were conducted over several months and included

22    meetings, conference calls and exchanges of written proposals by the parties through their

23    counsel.

24           23.      As a result, the Plaintiffs/Class Representatives, Defendants, and each of their

25    counsel have concluded that the interests of the Plaintiffs/Class Representatives and the

26    Settlement Classes, on one hand, and the Defendants, on the other hand, would best be served

27    by a settlement of this Litigation.

28

24.     The parties have vigorously advocated their respective positions throughout the pendency of this Litigation.

*Value of Immediate Recovery Outweighs Mere Possibility of Future Relief After Protracted and Expensive Litigation*

25.     Trial would likely have been an expensive, complex and time-consuming process that promised to feature a battle of various experts including but not limited to hydrologists, geochemists, air and groundwater modelers, toxicologists, risk assessors, medical doctors, real estate appraisers, historians, and standard of care experts.  In addition, the Plaintiffs planned to file the motion for class certification in the fall of 2012.  Briefing of that motion would have been extensive, and evidence for the motion would ultimately have been presented to the Court at a February 2013 hearing.  Motions under Fed. R. Evid. 702 may have been submitted in connection with the motion seeking class certification.  Subsequently, the parties planned to file dispositive motions, motions under F.R.E. 702 and motions in limine before trial.  The outcome of this Court's rulings on all of these motions is uncertain and could significantly affect the course of the Litigation.  Further, regardless of the outcome at trial, an appeal would likely have followed, thereby imposing additional costs on the parties and further delaying final resolution of this Litigation.

26.     Plaintiffs/Class Representatives, Defendants, and counsel for all parties recognize and acknowledge the expense, difficulties and lengthy duration of continued proceedings necessary to prosecute this Litigation through trial and appeals.

27.     Plaintiffs/Class Representatives, Defendants, and counsel for all parties also recognize and acknowledge that there is risk in any litigation and the outcome is uncertain, especially in a complex action such as this Litigation.

28.     The proposed settlement provides substantial relief to the Settlement Classes.  In particular, the proposed extension of the City Water System provides relief for the Members of both Settlement Classes that could not have been obtained at trial.  Thomas O. Jackson, Ph.D., a real estate valuation expert, has opined that the extension of the City Water System will protect and enhance property values in the Settlement Class Area.  The proposed

-14-

1    extension also protects the Members of the Medical Monitoring Settlement Class from any

2    ongoing exposure to contaminated groundwater and assures them of a safe, reliable supply of

3    domestic water.

4          29.    The proposed settlement also provides payments to Members of the Property

5    Damage Settlement Class for their property damage claims.  Dr. Jackson has opined that this

6    aspect of the settlement is fair, adequate and reasonable, particularly in light of the evidence

7    indicating that property values in the Settlement Class Area have been affected by multiple

8    factors, including but not limited to regional and national weakness in the housing markets,

9    and the difficulty of isolating and quantifying any adverse property value impact from a

10   specific environmental condition in the area.

11         30.    The proposed settlement addresses the concerns raised by putative Members of

12   the Property Damage Settlement Class who own real property in the Settlement Class Area on

13   which a Class Domestic Well is located.  Under the proposed settlement, each Member of the

14   Property Damage Settlement Class who owns a Class Domestic Well on the date of final Court

15   approval of the settlement may elect to either abandon that well and have Defendants pay for

16   abandonment in compliance with the requirements of the Nevada Division of Water Resources

17   (the "NDWR") or participate in the Settlement Water Right Application Process to seek an

18   individual NDWR permit for outdoor use of that well as authorized by state law.

19         31.    The proposed settlement provides money to each Member of the Medical

20   Monitoring Settlement Class to obtain, if they so choose, medical monitoring from a doctor of

21   his/her choice.  However, there are no express requirements regarding the manner in which an

22   individual Medical Monitoring Settlement Class Member utilizes such a payment.  Allan

23   Kanner, one of plaintiffs' counsel with substantial experience litigating medical monitoring

24   claims, has evaluated this aspect of the proposed settlement and opined that it is appropriate

25   and reasonable.  Pursuant to 42 U.S.C. §1395y(b)(2), commonly known as the Medicare

26   Secondary Payer statute, the Settling Parties have considered Medicare's interests in

27   connection with this settlement.   Moreover, they have taken actions to avoid shifting of the

28   burden for payment for medical care, treatment or services for which Members of the Medical

1   Monitoring Settlement Class will be compensated under the Class Settlement to Medicare or

2   Medicaid.  The proof of claim and release form advises the Members of the Medical

3   Monitoring Settlement Class that, if they choose to spend the settlement payment for medical

4   monitoring services, they may not also seek payment of the cost of such services under

5   Medicare or Medicaid.  In addition, Class Counsel have represented that they have advised or

6   will so advise the members of the Medical Monitoring Settlement Class.

7       *Parties Judge That Settlement Is Fair, Adequate and Reasonable.*

8       32.     It is undisputed that the Plaintiffs/Class Representatives and the Defendants

9   believe that the proposed settlement is fair, adequate and reasonable.

10      33.     It is undisputed that counsel for the parties support and recommend approval of

11  the settlement.  Counsel for the Plaintiffs/Class Representatives have been previously found by

12  this Court to be both knowledgeable and experienced in litigation of class actions and

13  environmental contamination claims such as those at issue in this Litigation.  Counsel for

14  Defendants have litigated cases involving claims similar to those asserted in this Litigation in

15  other cases in this Court and in courts in other jurisdictions.  They are also found by the Court

16  to be both knowledgeable and experienced in litigation of class actions and environmental

17  contamination cases.

18      *Reactions from Putative Members of the Settlement Classes.*

19      34.     Based on the small number of objections filed with the Court, most of the

20  Members of the Settlement Classes do not object to the proposed settlement.

21      35.     Similarly, based on the small number of exclusion requests, it appears that

22  Members of the Settlement Classes do not seek to pursue their own litigation but are willing to

23  accept the benefits of the proposed settlement.

24      *Conclusion*

25      36.     Under these circumstances, the Court finds and concludes that the settlement

26  set forth in the Amended Class Settlement Agreement attached to the Second Agreed Motion

27  is, in all respects, a fair, reasonable and adequate settlement of the claims that were or could

28  have been asserted in this Litigation against Atlantic Richfield Company and BP America Inc.

1    Accordingly, the settlement set forth in the Amended Class Settlement Agreement attached to

2    the Second Agreed Motion is finally approved, effective immediately, and its terms and

3    provisions ordered to be implemented forthwith, with each participating party to perform all

4    relevant terms and provisions of the Amended Class Settlement Agreement.

5    **Judgment**

6          37.     Judgment will enter pursuant to Fed. R. Civ. P. 41(a)(2), 54 and 58 consistent

7    and commensurate with the Amended Class Settlement Agreement and the Second Agreed

8    Motion.

9          38.     The following persons or entities, who at any time on or after February 14,

10   2011 and up to and including June 10, 2013 claim to have owned real property in the

11   Settlement Class Area but do not own a Class Domestic Well on the date of final Court

12   approval of the Class Settlement, are excluded at their express written request, submitted or

13   postmarked on or before May 3, 2013, from the Property Damage Settlement Class, the Class

14   Settlement, and the Judgment:

| Name | Lyon County Parcel No(s). | Status | Settlement Class Area |
|---|---|---|---|
| Burgess, Joseph M. & Coleen T. | 003-073-10 | Current Owner | Penrose |
| Cassano, Charles F. & Mulderick, Hazel M. | 014-261-33 | Current Owner | Tier 2 |
| Crookes, Frank & Linda D. | 003-042-02 | Current Owner | Penrose |
| Hughes, George | 014-291-10 | Former Owner | Tier 2 |
| Hunt, Todd C. & Kaylene | 003-012-14 | Current Owner | Penrose |
| Kinne, Charles A. Jr. & Sylvie | 003-072-02 | Current Owner | Penrose |
| Landers, Jim G. & Carolyn D. | 014-271-29 | Former Owner | Tier 2 |
| Lemos, Travis J. | 003-031-07 | Current Owner | Penrose |
| Mathews, Ralph C. & Mathews, Dale M., Trustees of Mathews, Myrtle Alberta Trust | 014-271-48 | Current Owner | Tier 2 |

| Name | Lyon County Parcel No(s). | Status | Settlement Class Area |
|------|---------------------------|--------|------------------------|
| Maxwell, Stanley W. & Myrna R., Trustees | 003-063-02 | Current Owner | Penrose |
| Peacher, Roger & Patricia | 014-261-24<br>014-261-27 | Current Owner | Tier 2<br>Tier 2 |
| Pollard, Kendall L. | 014-411-25 | Current Owner | Tier 1 |
| Sceirine Enterprises LLC | 014-241-14 | Current Owner | Tier 2 |
| Sceirine Enterprises LLC & Sceirine Ranches LLC | 014-241-08 | Current Owner | Tier 2 |
| Smith, Wesley A. & Beverly A., Trustees | 003-033-02 | Current Owner | Penrose |
| West, Donald A. & Virginia L., Trustees | 003-012-18 | Former Owner | Penrose |

They are not included in the terms "Members of the Property Damage Settlement Class" or "Members of the Settlement Classes" for purposes of the referenced parcels which are excluded from the Class Settlement.

39.     The following persons or entities, who on the date of final Court approval of the Class Settlement claim to own real property in the Settlement Class Area on which a Class Domestic Well is located, are excluded at their express written request, submitted or postmarked on or before September 30, 2013, from the Property Damage Settlement Class, the Class Settlement, and the Judgment:

| Name | Lyon County Parcel No(s). | Status | Settlement Class Area |
|------|---------------------------|--------|------------------------|
| Cassano, Charles F. & Mulderick, Hazel M. | 014-261-32 | Current Owner | Tier 2 |
| Harper, George R. & Patricia C. | 014-271-64 | Current Owner | Tier 2 |
| Holcomb, Ronald J. & Shauna L. | 014-261-29 | Current Owner | Tier 2 |
| Hoverson, Hover C. & Hylton-Hoverson, Donna M., Trustees | 014-271-25 | Current Owner | Tier 2 |

| Name | Lyon County Parcel No(s). | Status | Settlement Class Area |
|------|---------------------------|--------|-----------------------|
| Humildad, Robert F. & Lysa N. | 014-261-31 | Current Owner | Tier 2 |
| Johnston, Hal B. & Wallin, Diana R. | 014-251-03 | Current Owner | Tier 2 |
| Kassebaum, Darold & Rita | 014-281-05 | Current Owner | Tier 2 |
| Kattnig, Thomas J. & Barbara J., Trustees | 014-261-02 | Current Owner | Tier 2 |
| Lacey, Jonathan Allen | 014-261-30 | Current Owner | Tier 2 |
| Lemos, Rodney J., et al. | 014-261-01 | Current Owner | Tier 2 |
| Marston, George Helme Marston Jr. & Elsie Lee, Trustees | 014-411-08 | Current Owner | Tier 1 |
| Mathews, Ralph C. & Mathews, Dale M., Trustees of Mathews, Myrtle Alberta Trust | 014-271-49 | Current Owner | Tier 2 |
| Pitts, Ernest C. & Judith C., Trustees | 014-281-06 | Current Owner | Tier 2 |
| Pitts, Ernst C. & Judy C. | 004-153-11 | Current Owner | Tier 1 |
| Shirk, Neil | 014-271-52 | Current Owner | Tier 2 |
| Taylor, Donald R. & Catherine | 004-091-01 | Current Owner | Tier 2 |
| Wood, Aloha & Marty Dale | 014-261-05 014-271-21 | Current Owner | Tier 2 Tier 2 |

They are not included in the terms "Members of the Property Damage Settlement Class" or "Members of the Settlement Classes" for purposes of the referenced parcels which are excluded from the Class Settlement.

     40.    The following persons, who at any time on or after February 14, 2011 and up to and including June 10, 2013 claim to have been legal residents of the Settlement Class Area, are excluded at their express written request, submitted or postmarked on or before May 3, 2013, from the Medical Monitoring Settlement Class, the Class Settlement, and the Judgment:

| Name |
| --- |
| Cassano, Charles F. |
| Harper, George R. |
| Harper, Patricia C. |
| Holcomb, Ronald J. |
| Holcomb, Shauna L. |
| Hylton-Hoverson, Donna M. |
| Humildad, Lysa N. |
| Humildad, Robert F. |
| Hunt, Kaylene |
| Hunt, Todd C. |
| Johnston, Hal B. |
| Kassebaum, Darold |
| Kassebaum, Rita |
| Kattnig, Barbara |
| Kattnig, Thomas J. |
| Lacey, Jonathan Allen |
| Landers, Carolyn D. |
| Landers, Jim G. |
| Lemos, Danny |
| Lemos, Guy F. |
| Lemos, Jodi L. |
| Lemos, Mackenzie G. |
| Lemos, Travis J. |
| Marston, Elsie Lee |
| Marston, George Helme Jr. |
| Mathews, Dale M. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Name |
| --- |
| Mathews, Ralph C. |
| Maxwell, Myrna R. |
| Maxwell, Stanley W. |
| Moore, Ronald |
| Moore, Vickie |
| Mulderick, Hazel M. |
| Pitts, Ernst C. |
| Pitts, Judith |
| Pollard, Kendall L. |
| Shirk, Neil |
| Taylor, Catherine E. |
| Taylor, Donald R. |
| Wallin, Diana R. |
| West, Donald A. |
| West, Virginia L. |
| Wood, Aloha |
| Wood, Marty Dale |

They are not included in the terms "Members of the Medical Monitoring Settlement Classes" or "Members of the Settlement Classes."

41.     The five written objections submitted in May 2013 by or on behalf of putative Property Damage Settlement Class Members who own real property in the Settlement Class Area on which a Class Domestic Well is located appear to have been resolved by the Amended Class Settlement Agreement because none of the objectors have resubmitted them and they are therefore denied.  No other objections have been timely submitted.

42.     The Court was advised that putative Property Damage Settlement Class Members eligible to have their houses connected to the City of Yerington water system raised questions during the supplemental notice period regarding the terms of the City Release Form

1    that they are required to sign for that connection. The Court is further advised that the Settling

2    Parties and the City of Yerington have responded to those questions by preparing an Amended

3    City Release Form which was provided to the Court on September 12, 2013 as Appendix 2 to

4    the Joint Request to Supplement the Record with Amendments to the City Release Form in

5    Proposed Amended Class Settlement Agreement [ECF No. 111]. The Court hereby approves

6    the Amended City Release Form and directs that all City Release Forms previously signed by

7    settlement class members be deemed amended to conform to the text of the Amended City

8    Release Form. Those settlement class members who previously signed the original form need

9    not re-sign the amended form, though they will be permitted to do so if they request.

10        43.    This Court dismisses with prejudice all claims and causes of action that were or

11    could have been alleged on behalf of Plaintiffs/Class Representatives and all Members of one

12    or both of the Settlement Classes against Defendants in this Litigation in their entirety and on

13    the merits.

14        44.    Except for the award of litigation costs and attorney fees pursuant to Class

15    Counsel's motion that is addressed in a separate order, all parties will bear their own attorney

16    fees and costs.

17        45.    Upon the Effective Date, each of the Plaintiffs/Class Representatives, each of

18    the Members of one or both of the Settlement Classes, and each of the other Releasing Parties

19    will be deemed to have, and by operation of this Judgment and Order will have, fully, finally

20    and forever released, relinquished and discharged each and all of the Released Parties from all

21    claims and causes of action alleged or that could have been alleged in this Litigation

22    (excluding only claims for personal injury), any and all Released Claims, and all claims,

23    known or unknown, based upon or arising out of the institution, prosecution, assertion,

24    settlement or resolution of this Litigation or the Released Claims.

25        46.    All Plaintiffs/Class Representatives and all Members of one or both of the

26    Settlement Classes are forever barred and permanently enjoined from asserting against any

27    Released Party, directly or indirectly, individually or in a representative capacity, all claims

28    and causes of action alleged or that could have been alleged in the Litigation (excluding only

1  claims for personal injury), any and all Released Claims, and all claims, known or unknown,

2  based upon or arising out of the institution, prosecution, assertion, settlement or resolution of

3  this Litigation or the Released Claims.  Expressly included in the foregoing bar and injunction

4  are the respective heirs, executors, administrators, personal representatives, successors and

5  assigns of the Plaintiffs/Class Representatives and every Member of one or both of the

6  Settlement Classes.

7     47.  Upon the Effective Date, each of the Plaintiffs/Class Representatives, each of

8  the Members of one or both of the Settlement Classes, and each of the Releasing Parties will

9  be deemed to have, and by operation of this Judgment and Order will have, covenanted and

10  agreed that he, she, or it will forever refrain from instituting, maintaining, collecting on or

11  proceeding against any Released Party on any claim, demand, cause of action or liability of

12  any nature whatsoever, whether or not now known, suspected or claimed, which it ever had,

13  now has or may hereafter have against any Released Party relating to any Released Claims.

14     48.  The Agreed Motion, the Class Settlement Agreement, the Second Agreed

15  Motion, the Amended Class Settlement Agreement, the settlement contained therein, or any

16  act performed, statement made or document executed pursuant to or in furtherance of the

17  Agreed Motion, the Class Settlement Agreement, the Second Agreed Motion, the Amended

18  Class Settlement Agreement, or the settlement contained therein (i) is not, may not be deemed

19  to be, and may not be used as an admission of, or evidence of, the validity or lack thereof of

20  any Released Claim, any fault, wrongdoing or liability of any Released Party or any other

21  Person, or the truth of any future claim which has been or could have been asserted in this

22  Litigation, and (ii) is not, may not be deemed to be, and may not be used as an admission of, or

23  evidence of, any fault or omission of any Released Party or any other Person in any civil,

24  criminal or administrative proceeding in any court, administrative agency or other tribunal.

25  Without prejudice to the matters preserved under the Court's retained jurisdiction (¶ 50

26  below), the Released Parties may file the Agreed Motion, the Second Agreed Motion  and/or

27  the Judgment in order to support a defense or counterclaim based on principles of *res judicata*,

28  collateral estoppel, claim-splitting, release, good faith settlement, judgment bar or reduction,

1   setoff, or any other theory of claim or issue preclusion or similar defense or counterclaim in

2   any action, proceeding, or claim that may be brought against them by any Plaintiff/Class

3   Representative, Member of one or both Settlement Classes, or Releasing Party.

4          49.     The Court directs the entry of this Judgment finally adjudicating all the claims

5   and all the parties' rights and liabilities.

6          50.     Without affecting the finality of this Judgment and Order in any way, this Court

7   hereby retains continuing jurisdiction over the implementation and enforcement of the terms of

8   the settlement contained in the Second Agreed Motion and the Amended Class Settlement

9   Agreement and over all parties to this Litigation for purposes of implementing, construing,

10   enforcing and administering the settlement contained in the Second Agreed Motion, the

11   Amended Class Settlement Agreement, and this Judgment and Order.

12          51.     In the event that the settlement does not become effective in accordance with

13   the terms of the Second Agreed Motion and the Amended Class Settlement Agreement, then

14   this Judgment and Order will be rendered null and void to the extent provided by and in

15   accordance with the Second Agreed Motion and the Amended Class Settlement Agreement

16   and will be vacated.  In such an event, all orders entered and releases delivered in connection

17   herewith will be null and void to the extent provided by and in accordance with the Second

18   Agreed Motion and the Amended Class Settlement Agreement.

19          **IT IS SO ORDERED.**

20

21   Dated: October 21, 2013.

22                                                BY THE COURT

23

24                                                _____

25                                                Robert C. Jones
                                                 United States District Court Judge

26

27

28